677 So.2d 668 (1996)
Liwawa J. DE LOS REYES, Plaintiff-Appellee,
v.
USAA CASUALTY INSURANCE COMPANY, et al., Defendants-Appellants.
No. 28491-CA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1996.
*669 David L. White, Bossier, for Appellant.
J. Patrick Hennessy, Shreveport, for Appellees.
Before BROWN, WILLIAMS and GASKINS, JJ.
BROWN, Judge.
This appeal arises out of the trial court's apportionment of fault and quantum in an action for personal injuries sustained by a teenager who was struck by a vehicle at a "keg" party. We affirm.

Facts
On November 2, 1990, Ursula De Los Reyes, "Illa", aged sixteen, attended a keg party at the invitation of another teenager, Adam Roberts. The party was held in the yard of Roberts' mother's house. The oldest person at the gathering was Roberts' 21-year-old brother. Non-drinking guests were charged $2 while beer drinkers had to purchase a cup for $4.
Witnesses estimated a crowd of between 100 to 150 people. An altercation broke out between some party-goers and Robert Caldwell as a result of "slam dancing." This type of dancing was described as "just crazy stuff" where the participants would "run into each other. It's kind of aggressive and violent..." Caldwell, Stephen Masson and two other people attempted to leave the party in Masson's Ford Festiva.[1] There was testimony that this group's appearance was different and that they were called "skinheads" by the other antagonists. Illa was struck by Masson's car and dragged under it. Illa sustained a number of abrasions and lacerations which left permanent scars. She also has recurrent back and neck pain.
Illa testified that there was a live band and that beer kegs were available for those who wanted to drink. Illa paid the cover charge but did not drink beer. She observed Caldwell walking toward the area where the cars were parked and saw three guys behind him who appeared upset. Illa told Masson to get Caldwell in the car so they could leave without a fight. Masson and his girlfriend told Illa that they had mixed Robitussin cough syrup with beer causing them to hallucinate. They reported seeing lemons on Illa's head.
Cars were parked on the grass next to the driveway and the party was on an elevated patio. When Illa got to where the cars were parked, Caldwell and his companions were already there and a crowd had gathered. Illa wanted to help them leave the party without trouble. Illa stated that she did not see anyone hitting Masson's car or its occupants. After observing Caldwell, Masson and the others get into the vehicle and drive *670 toward the driveway, Illa started walking back toward the patio. Masson's car was heading in the opposite direction. When she heard someone scream, Illa turned around, saw headlights and the next thing she knew, she was under the car. Illa stated that there was no way for a car driving toward the party to exit.
When Illa was struck, the car did not stop. Her necklace caught on something and she was dragged. Illa described being unable to breathe while under the car. Some other guests lifted the vehicle off of Illa and called her mother and an ambulance. After the car was lifted off her, Illa heard people hitting the car. Illa stated that her wounds burned when the air hit them. Although she asked them not to, emergency personnel cut off all her clothes, including her underwear, in front of the crowd that had gathered.
Kenneth Gates had been at the party about an hour before the accident and along with Caldwell, participated in the slam dancing. When asked to leave the party, he went down the hill with Caldwell, Masson and others. When they were in Masson's car, he said a crowd began hitting and trying to tip over the vehicle. As they drove off, the car was hit with a bat. Gates stated that they tried to leave, but were blocked by other cars. When they circled back, Gates estimated their speed to be 20-25 m.p.h. and stated that the car was sliding on the grass. People outside the car hit him through the broken windows. Gates did not learn until the next day that Illa had been hit by the car.
Michael Maloney saw people slam dancing, then observed people getting into the car and others beating on the car. Maloney stated that the car drove away, made a circle and came back to where the people were. At that point, someone yelled that there was a person under the car. Maloney stated that the exit was in the opposite direction from where the people were. He did not know if there was another way out. Maloney stated that he was sure he had more than six beers at the party.
Steven Masson testified that he did not drink beer or Robitussin at the party. He indicated that someone called his group "skinheads." After observing the slam dancing and the problem with Caldwell, Masson and his companions went to his car. People gathered around the car and tried to push over the car. Masson stated that he was afraid and was trying to leave. As he began to move the car slowly, the rear window was broken out and people began hitting him. He tried to leave, but cars blocked the way. Masson said that he could not see and did not know if there was a front exit. He turned around to go out the way he'd come in and people gathered around the car. After he turned the car around, his windshield was smashed. Masson did not know if the windshield and windows were broken before or after he struck Illa. Masson claimed that glass got in his eye and couldn't see through the windshield. Masson and his passengers got out of his car and ran away through the woods.
Suit was originally brought on Illa's behalf by her mother, Liwawa De Los Reyes. Illa was substituted as party plaintiff upon reaching the age of majority. Named as defendants were Adam Roberts' parents and their homeowner's insurer, USAA; the parents of the teen-aged driver, Stephen Masson, and USAA, their liability insurer; and Louisiana Indemnity Insurance Company, Illa's uninsured motorist carrier. The Roberts named as third party defendants Thrifty Liquor and the parents of the minor who allegedly purchased beer for the party.
Prior to trial, all defendants were dismissed except Louisiana Indemnity, Illa's UM carrier. Illa had settled with Masson's liability insurer for the policy limit of $20,000 and sought damages in excess of this amount from her UM insurer, together with statutory penalties and attorney fees.[2]
The trial court assessed Stephen Masson, the driver of the vehicle that struck plaintiff, with 90% of the fault and Adam Roberts, the host of the keg party, with 10% of the fault. Plaintiff was awarded special damages of $4,336.30 and general damages of $35,000.
*671 In accordance with the court's findings as to percentages of fault, Louisiana Indemnity was held liable (for up to the amount of its policy, $10,000, plus interest) for 90% (percentage of fault apportioned to Masson) of the damages in excess of the $20,000 already recovered by plaintiff (90% of 19,336.30 = $17,302.67).
Plaintiff's demand for penalties and attorney fees was rejected.
It is from this judgment that Louisiana Indemnity has appealed, asserting that the trial court erred in assessing fault and quantum.

Discussion

Allocation of Fault
Appellant, Louisiana Indemnity, contends that the trial court erred in its assessment of fault. According to appellant, the "sudden emergency" doctrine exonerates Masson. Appellant also asserts that at least 25% of the fault should have been apportioned to Thrifty Liquor.
The trier of fact is owed great deference in its allocation of fault and may not be reversed unless clearly wrong. Clement v. Frey, 95-1119, 95-1163 (La. 01/16/96), 666 So.2d 607. Like the assessment of damages, fault allocation is a factual determination and the trier of fact, unlike the appellate court, has the benefit of viewing firsthand the witnesses and evidence. Clement, supra. It is the appellate court's duty to give deference to the trier of fact. An appellate court may reapportion fault only after it has found an abuse of discretion and then only to the extent of lowering or raising the percentage of fault to the highest or lowest point reasonably within the trial court's discretion. Hill v. Morehouse Parish Police Jury, 95-1100 (La. 01/16/96), 666 So.2d 612; Clement, supra.
The following is excerpted from the trial court's well-written reasons for judgment:
[T]his court finds that Stephen Masson as driver of the vehicle that struck plaintiff was 90% at fault while Adam Roberts as the person who had possession or garde of the property and who not only allowed but encouraged/organized the "keg party" to occur was 10% at fault. Stephen Masson owed a duty to keep a proper lookout while driving his vehicle. He breached that duty by driving in a reckless manner which he tried, without credence, to explain that he was attempting to leave the "keg party." The clear evidence in this case is that Stephen Masson in fact turned his vehicle away from the exit area and traveled toward the crowd of persons which included the plaintiff. Obviously, Stephen Masson's reckless operation of his vehicle was a cause-in-fact and a legal cause of plaintiff's injuries.

The negligence of Stephen Masson cannot be excused by the application of the "sudden emergency" doctrine. This doctrine does not apply when an individual has placed himself in a position of peril or could have avoided the impending danger. Stephen Masson went to a "keg party" during which large amounts of alcohol were consumed by those attending the party. Stephen Masson knew that there existed the possibility that a fight/disturbance could or would take place at a party where large amounts of alcohol were being consumed. Although he attempted to remove himself from the situation once it became apparent that others were pursuing him and one of the passengers in his car, this does not justify the reckless operation of his vehicle which caused plaintiff's injuries. In addition, the preponderance of evidence is that Stephen Masson and his friends had been drinking and that Stephen Masson was hallucinating at the time of the accident.

Adam Roberts was 10% at fault due to his allowing a "keg party" to occur at property which was under his supervision and control at the time. This "keg party" was attended in large part by minors who were allowed to consume alcohol as long as they paid a small "cover charge." Roberts provided no security nor supervision. Roberts breached his duty to guard against unreasonable risk of injury or harm to guests by allowing alcohol to be served to minors and by failing to provide *672 any means of security or supervision. The risk inherent in serving alcohol to minors and failing to provide any type of security or supervision was a cause-in-fact and a legal cause of the accident and resulting injuries. (Emphasis added).
We can not say that the trial court was manifestly erroneous in its allocation of fault.[3] The record clearly supports the trial court's credibility assessments.

Assessment of Damages
Appellant argues that the trial court's award of $35,000 in general damages is excessive and should be reduced.
General damages involve mental or physical pain and suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which can not be definitively measured in monetary terms. Keeth v. State Through Dept. of Public Safety and Transportation, 618 So.2d 1154 (La.App. 2d Cir.1993), writ denied, 619 So.2d 563 (La.1993); Anderson v. Bennett Wood Fabricators, 571 So.2d 780 (La.App. 2d Cir.1990), writ denied, 573 So.2d 1135 (La.1991).
The discretion vested in the trier of fact is vast; an appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Rick v. State, Dept. of Transportation and Development, 93-1776 (La. 01/14/94), 630 So.2d 1271; Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. den. sub. nom. Maritime Overseas Corp. v. Youn, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Introduced into evidence were photographs of Illa's feet and legs taken several days after the accident. The trial court observed all scars but one on Illa's buttocks which was too embarrassing for Illa to display. Illa sustained a three cm. flat scar on her left ankle, a nine cm. scar on her left knee, a twenty by one-half cm. scar on her right thigh and a five cm. scar on her left thigh.
Because people frequently asked about her scars, Illa stated that she regularly wore dark hose to conceal them. The trial court noted that Illa was self-conscious about her scars. Because she had to wear dark tights, Illa had given up modeling.
Although knocked unconscious, Illa sustained no broken bones, though she did receive stitches for her lacerations at the emergency room. A couple of weeks after the accident, Illa saw an orthopedic specialist who diagnosed myoligamentous strain of her lumbar spine. He prescribed medication and advised Illa to restrict her activities. The prognosis was that her minor soft tissue injury would fully resolve without permanent impairment. Illa's neck injuries resolved, but she stated that she continues to have low back pain if she exercises too long. She never had back pain before the accident and is now unable to engage in the strenuous activities she enjoyed prior to the accident.
Considering the extent and permanency of Illa's scars, we can not say that the trial court abused its great discretion in awarding her $35,000 in general damages.

Conclusion
The judgment of the trial court in favor of plaintiff, Ursula De Los Reyes, and against defendant, Louisiana Indemnity Insurance Company, is AFFIRMED. Costs are assessed *673 to defendant, Louisiana Indemnity Insurance Company.
NOTES
[1] Throughout the record, including all of the pleadings and the driver's insurance documents, the driver's name is spelled Masson. However, when he testified, the transcript reveals that Masson spelled his name "Masoson."
[2] Plaintiff had UM limits of $10,000 available under her policy issued by Louisiana Indemnity.
[3] Appellant's argument that Thrifty Liquor should be assessed with 25% of the fault for plaintiff's injuries is meritless. The only evidence in the record concerning the purchase of the beer was plaintiff's testimony that another minor bought the alcohol from Clearview Liquor. Appellant argues that Clearview is a court reporter's error and that the record should read Thrifty. The circumstances of the purchase are unknown and the record is utterly devoid of any evidence of negligence on the part of Thrifty Liquor. The trial court properly refused to allocate any fault to Thrifty Liquor.