765 So.2d 1185 (2000)
Patricia I. ORILLAC, et al., Plaintiffs-Appellees,
v.
Cleo SOLOMON, et al., Defendants-Appellants.
No. 33,701-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2000.
*1186 Lunn, Irion, Salley, Carlisle & Gardner by J. Martin Lattier, Jack E. Carlisle, Jr., Shreveport, Counsel for Appellants.
Robert S. Tew, Monroe, Counsel for Appellees.
Before NORRIS, PEATROSS & DREW, JJ.
PEATROSS, J.
This appeal arises from an automobile accident in which Defendant, Cleo Solomon, was solely at fault in injuring Plaintiff, Patricia Orillac (hereinafter Ms. Orillac)[1], and in damaging the vehicle driven by Ms. Orillac, which was owned by her father, Plaintiff, Dr. Rogelio Orillac. The trial court awarded Ms. Orillac $45,000 in general damages and $4,638 in medical expenses.[2] Dr. Orillac was awarded $5,000 in property damage for the depreciation of his car. Defendants, Mr. Solomon and his insurer, Reliance Insurance Company, appeal the judgment as excessive. For the reasons stated herein, we find that the general damages awarded to Ms. Orillac were excessive and amend the trial court's judgment, and, as amended, we affirm.

FACTS
On May 1, 1997, in Monroe, Louisiana, a vehicle driven by Ms. Orillac, and owned by her father, Dr. Rogelio Orillac, was struck by a left-turning vehicle operated by Mr. Solomon, and insured by Reliance Insurance Company. The resulting lawsuit was tried in October 1999. The parties stipulated to Mr. Solomon's liability, leaving only the issue of damages, Dr. Orillac's property damage and Ms. Orillac's personal injury damages, to be determined by the trial court.
The deposition and records of Dr. Douglas Brown, the orthopaedist who treated Ms. Orillac, were introduced into evidence without objection. In his deposition testimony, Dr. Brown indicated that he first examined Ms. Orillac on May 2, 1997, the day following the accident. At that time, she complained of headaches, but admitted she had a history of migraine headaches. There was no restriction of movement in Ms. Orillac's neck; her cranial nerves were normal; and her shoulder movement was *1187 unrestricted. Ms. Orillac could walk normally and her reflexes were fine, but she did have some tenderness in her lower back along the middle of the right lumbar spine. X-rays of Ms. Orillac's cervical and lumbar spine appeared to be normal, although there was a "questionable defect" in a section of the L3 vertebra on the right side which corresponded to the area where she had pain.
Several weeks later, on May 12, 1997, Ms. Orillac returned to Dr. Brown with complaints of back pain. She also complained for the first time of pain in her left knee and stated that she felt she had struck her knee in the accident on the drivers' side car door or dashboard. Examination revealed nothing specific. Mrs. Newman had tenderness in the joint line on the inside of her knee that suggested a possible cartilage injury. With respect to her back, Dr. Brown found pain when he percussed Ms. Orillac's spine, but no neurologic defect. Dr. Brown ordered an MRI of Ms. Orillac's lumbar spine, as well as her knee, and told her to return once those were completed. Ms. Orillac returned on July 21, 1997, and the MRI of her knee showed a small tear in the back of the inside cartilage (medial meniscus). The location corresponded to the area where Ms. Orillac had pain. With respect to her back, the MRI showed "just some minimal bulging" of two discs and "some very slight encroachment" between the L5 and S1 vertebra that would impinge on the S1 nerve root.
After reviewing these findings, Dr. Brown informed Ms. Orillac that surgery was not warranted, and he put her on an exercise program. He advised her to "back off" on gymnastic events and maneuvers until she was completely well.
Dr. Brown did not see Ms. Orillac again until May 1998, at which time she informed Dr. Brown that physical activity such as cheerleading or aerobic tumbling gave her back pain. Ms. Orillac walked smoothly, however, and she could climb up and down on the examination table without difficulty. Her neurologic function was normal, although she still had tenderness at the L4 and L5 vertebra. This tenderness was consistent with the abnormalities which were revealed by the MRI. There was no evidence, however, of any true nerve root impingement. Ms. Orillac's knee was not swollen and it had a full range of motion; the ligaments were normal, but she did have some tenderness on the back inside corner of her knee where the changes were seen on the MRI. Dr. Brown advised Ms. Orillac to do more stretching exercise and aerobic activities, but not weight lifting. Ms. Orillac admitted she was able to do "a little bit of jogging" and that it did not bother her. Again, Dr. Brown advised her that he thought there was no need for surgery. Ms. Orillac did not seek treatment from Dr. Brown again, and she later admitted that Dr. Brown was the only physician who had ever treated her for the accident-related injuries.
Dr. Brown could not say that Ms. Orillac's knee problems were more probably than not caused by the automobile accident. His hesitation was based on the fact that she did not complain about her knee when she first came to see him. At the same time, Dr. Brown admitted that it was possible her knee problem initiated with the accident and then became more symptomatic with time. He indicated that, if the knee started to deteriorate any more in the future or gave her more trouble, she might require arthroscopic meniscectomy of the knee, an outpatient operation that should correct the problem.
In regard to Ms. Orillac's back injury, Dr. Brown was able to state that, more probably than not, it did result from the accident. As for the future, Dr. Brown stated that the discs normally will stabilize after a period of time and not require surgery. The fact that Ms. Orillac had gone approximately two years without having to have surgery indicated she probably would not have to have surgery in the future. He expected her back problem to be mainly symptomatic with prolonged *1188 standing and during pregnancy, but not to the extent of requiring surgery.
The deposition of Dr. Andrew Marsala, a board-certified radiologist, was also entered into evidence. Dr. Marsala reviewed the MRIs performed on Mrs. Newman. He indicated that the MRI of the lumbar spine showed a very mild bulging at the L4-5 and L5-S1. He stated that the discs themselves were "not really very degenerated," just mildly bulging. He further stated that he saw that type of bulging "almost every day" on MRIs of the lumbar spine and that disc bulging can start in early adulthood. Dr. Marsala testified that the type of bulge he saw in Ms. Orillac's case commonly is asymptomatic. Although he indicated that trauma could cause "a little mild bulge like this," most commonly it was caused by early degenerative changes. As to causation in Ms. Orillac's case, he indicated that nothing on the MRI told him either way with any degree of certainty.
In reviewing the MRI of Ms. Orillac's knee, Dr. Marsala indicated that the film looked like "a normal young adult knee." He did note some degeneration in the posterior horn of the medial meniscus, but indicated that was commonan early change seen in adults, and not necessarily a sign of trauma or disease. He found no tears or evidence of trauma, and no fluid or blood in the joint. Dr. Marsala agreed with the report of Dr. Todd B. Guinn, the radiologist who originally read the report. Dr. Guinn found no "discrete meniscus tear" or other abnormality identified in the left knee.
With respect to his daughter's injuries, Dr. Orillac testified that Mrs. Newman still had pain at the time of trial, and he opined that she would always have pain "from time to time." Ms. Orillac testified about her medical treatment with Dr. Brown, and repeated many of the statements Dr. Brown had made about her condition. She indicated that, for the first six months following the accident, she had trouble sitting and driving for long periods of time. In both instances, she would need to move around because of back pain. At the time of trial, Ms. Orillac testified that she was still having problems and had had back pain the previous day while shopping at the mall with her mother. Her job involved working at a computer, and she had to "stretch around and move around" because of her back. Ms. Orillac testified that she took mild medication, such as Aleve, when she had problems with her back and that she avoided picking up anything heavy. She was concerned about having children and stated that not knowing what was going to happen made her afraid. She admitted that, at the time of the accident, she was a full-time college student and a member of a sorority and that during her senior year following the accident she participated in college activities.
Kevin Edwards, manager of the used car division of the Mazda dealership from which Dr. Orillac had originally purchased the vehicle, testified concerning the value of the property damage to the vehicle. The vehicle was repaired following the accident, the costs of which were paid by Defendant, Reliance Insurance Company. Mr. Edwards was called by Plaintiffs to testify concerning depreciation of the vehicle due to the fact that it had been repaired. Mr. Edwards estimated the depreciation figure to be "somewhere in the neighborhood of $4,000 or $5,000." When the court asked him to be more specific, he indicated he would "just say five if I have to give an exact number." Defendants called no witnesses and introduced no evidence to counter Mr. Edwards' estimate. Dr. Orillac testified concerning damage to the vehicle, but not the depreciation value.

DISCUSSION
We will first address Defendants' second assignment of error in which they complain that the trial court erred in awarding $5,000 to Dr. Orillac for depreciation of the damaged vehicle. In a case involving damages to an automobile where the measure of damages is the cost of *1189 repair, additional depreciation damages may be recovered for diminution in value attributable to the vehicle's involvement in the accident. See Smith v. Midland Risk Insurance Company, 29,793 (La. App.2d Cir.9/24/97), 699 So.2d 1192; Davies v. Automotive Casualty Ins., 26,112 (La.App.2d Cir.12/7/94), 647 So.2d 419. Defendants argue that no definitive evidence was presented to substantiate an award of $5,000 for the depreciation of the vehicle in the instant case. As previously noted, however, Mr. Edwards testified to a figure of $5,000, and there was no evidence introduced to the contrary. A trial court's assessment of monetary damages may not be disturbed absent an abuse of discretion. Smith, supra. The trial court in the case sub judice obviously accepted Mr. Edwards' testimony, and we find no abuse of discretion in that decision. Accordingly, this assignment of error is without merit.
Defendants' first assignment of error concerns the general damages award of $45,000 to Ms. Orillac and that portion of special damages awarded which include medical expenses associated with treatment for her knee injury. In particular, Defendants argue that the general damage award of $40,000 associated with Ms. Orillac's back injury was clearly excessive and that the trial court erred in awarding any damages, at all, for Ms. Orillac's knee injury, primarily because Dr. Brown did not state that, more probably than not, her symptoms were related to the accident.
In appellate review of general damages, the initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Gladney v. May, 29,373 (La. App.2d Cir.5/7/97), 697 So.2d 1022, writ denied, 97-2417 (La.1/9/98), 705 So.2d 1101; De Los Reyes v. USAA Casualty Insurance Co., 28,491 (La.App.2d Cir.6/26/96), 677 So.2d 668. The appellate question is not whether a different award may have been more appropriate, but whether the trial court's award can be reasonably supported by the record. Gladney, supra; Bonner v. Watkins Motor Lines, Inc., 494 So.2d 1363 (La.App. 2d Cir.1986); Winterrowd v. Travelers Indemnity Co., 452 So.2d 269 (La.App. 2d Cir.1984), aff'd 462 So.2d 639 (La.1985). Only after an articulated analysis of the record discloses an abuse of discretion may the appellate court determine that the award is either excessive or insufficient. Reck v. Stevens, 373 So.2d 498 (La.1979); Gladney, supra; De Los Reyes, supra.
The proper procedure for examining whether an award is excessive is to determine whether the amount can be supported under the interpretation of the evidence, most favorable to the plaintiff, which reasonably could have been made by the trier of fact.... DeYoung v. Simons, 32,378 (La.App.2d Cir.10/27/99), 743 So.2d 851; Manuel v. State Farm Mutual Automobile Co., 30,765 (La.App.2d Cir.8/19/98), 717 So.2d 277. If the award is abusively high, it is reduced to the highest amount the trier of fact could have awarded. Whitthorne v. Food Lion, Inc., 30,105 (La. App.2d Cir.1/21/98), 706 So.2d 193; Dixon v. Tillman, 29,483 (La.App.2d Cir.5/7/97), 694 So.2d 585, writ denied, 97-1430 (La.9/19/97), 701 So.2d 174; Day v. Silver Oak Casualty, Inc., 28,566 (La.App.2d Cir.8/21/96), 679 So.2d 486.
With respect to Ms. Orillac's knee injury, the trial court correctly stated in oral reasons for judgment that Dr. Brown found a slight tear of the medial meniscus inside the cartilage of the left knee. While it is true that Dr. Brown found it "pretty hard to say" that the automobile accident caused the knee problem, he admitted the possibility. Given the fact that Ms. Orillac had no history of knee problems prior to the accident, despite being a cheerleader and being involved in athletics, the appearance of symptoms fairly soon after the accident is indicative of a causal connection. Furthermore, Dr. Brown stated that *1190 the mechanics of the accident were such that Ms. Orillac could have sustained the type of injury to her knee that was reflected in the MRI findings and the resulting pain which she experienced in that area of her knee. We find no merit to Defendants' argument that the injury cannot be related to the accident simply by virtue of Mrs. Newman's failure to report any injuries to the police officer on the scene of the accident or to tell Dr. Brown about the pain in her knee until her second visit. In many instances, the victim of an automobile accident is not cognizant of the extent of his/her injuries until some time after the accident when any initial soreness has dissipated. Considering the evidence as a whole, we find no abuse of discretion in the trial court's finding of a causal connection between the accident and Ms. Orillac's knee injury. Accordingly, we affirm that portion of the judgment awarding $5,000 in general damages and any special damages attributable to Mrs. Newman's knee injury.[3]
Finally, we address the general damage award for Ms. Orillac's back injury. Defendants contend that the injury was a soft-tissue injury, was not severe and was of short duration. They further argue that, even if the minor lumbar disc bulges were related to the accident, Ms. Orillac only suffered minimal problems of a short duration and that the medical reports of Drs. Brown and Marsala confirmed that the disc bulges did not cause any neurologic deficits.
In contrast, Plaintiffs point out that Dr. Brown testified that Ms. Orillac's back injury was related to the accident and that she would continue to have problems with prolonged standing and childbearing as a result of the bulging discs. Plaintiffs argue that the trial court's award of $40,000 in general damages for the back injury is not an abuse of discretion.
After reviewing the particular facts and circumstances of this case concerning Ms. Orillac's back injury, we conclude that the trial court abused its broad discretion in awarding $40,000 in general damages for Ms. Orillac's back injury. The MRI of her lumbar spine showed minimal bulging of two discs and very slight encroachment between vertebra. Ms. Orillac saw Dr. Brown, and only Dr. Brown, for a total of only four times, one of which was to review the MRI. She continued to function as a full-time college student and member of a sorority prior to her graduation; and, despite her complaints of continued pain at the time of trial, she admitted to some jogging and to full-time employment. Dr. Brown opined that, if Ms. Orillac's back injury did become symptomatic, it would be as the result of prolonged standing. We note that Ms. Orillac testified that her day-to-day job duties consisted mainly of sitting in front of a computer all day. We conclude that Ms. Orillac's back injury, though of a continuing nature, was not so severe as to justify a $40,000 general damage award. Accordingly, we find that the trial court abused its discretion in making an award in this amount.
After reviewing the jurisprudence, including those cases cited by both Defendants and Plaintiffs, we conclude that the highest general damage award for Ms. Orillac's back injury that would not be an abuse of discretion is $30,000. See Gladney, supra; Panzico v. Price, 26,232 (La. App.2d Cir.5/10/95), 658 So.2d 1310, writ denied, 95-1453 (La.9/29/95), 660 So.2d 853; Spurrell v. Ivey, 25,359 (La.App.2d Cir.1/25/94), 630 So.2d 1378.

DECREE
For the foregoing reasons, we amend that portion of the judgment relating to general damages associated with Ms. Orillac's, back injury, by reducing the award for her back injury from $40,000 to $30,000. As amended, we affirm the judgment of the trial court. Costs shall be divided equally between Plaintiffs and Defendants.
*1191 AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] At the time of trial, Patricia Orillac had married and become Patricia Orillac Newman.
[2] In it's oral reasons for judgment, the trial court stated that the general damage award was comprised of $40,000 in compensation for the injury to Ms. Orillac's back injury and $5,000 for the injury to her knee.
[3] The special damages are not broken down to indicate which charges are associated with Ms. Orillac's knee injury as opposed to her back injury.