BROWN, C.J.
The automobile accident which is the subject of this appeal happened at a location where the width of Village Lane narrowed from what would be two lanes into one. Plaintiff, Brittni Owens, was in the inside lane behind defendant, Joann Brown, who was in the outside lane. The Owens vehicle struck Brown’s vehicle on the driver’s side door. Owens filed suit against Brown and Brown’s insurer, State Farm Mutual Automobile Insurance Company. The trial court ruled that Owens was 100% at fault. For the reasons set forth below, we reverse and render judgment based on principles of comparative fault.

Facts

The accident occurred on October 9, 2001, on Village Lane in Bossier City, Louisiana. Airline Drive is a heavily traveled thoroughfare running north and south. Brittni Owens turned off Airline Drive onto Village Lane heading west to the Outback Steak House where she was employed. At the Airline Drive intersection, Village Lane is divided by a grass median with its westbound and eastbound lanes wide enough to accommodate two vehicles; however, there are no center line markings. Within a short distance, approximately 50 yards, the median ends and the westbound roadway tapers into one lane. At this point there is one lane for eastbound traffic and one lane for westbound traffic.
This transition zone where the road tapers into one lane has no signs, markings, or warning devices. Because there is no center line marking two lanes, it is difficult to tell which lane drops off and which continues.
|3On the date of the accident, Joann Brown drove out of the parking lot of the Bossier Federal Credit Union at the north corner of Airline and Village Lane. Brown turned onto Village Lane heading west along the outside curb and proceeded at a slow speed. At the point where the street begins to merge into one lane are five drive-through lanes at the rear of the credit union building. Brown was looking at these lanes to insure that traffic did not flow out in front of her.
According to Owens, just before the accident Brown’s vehicle was stopped in the outside lane near the point where that lane ends. Owens stated that she could see the brake lights of Brown’s vehicle and that Brown was looking down as if doing paperwork. Owens stated that she concluded that Brown would not pull over, but kept looking at Brown’s face to see if Brown would look: “That way I would know whether to slow down or not. And she never did [look].” Owens continued to drive on and so did Brown. Owens testified that she slammed on her brakes, but her vehicle struck Brown’s vehicle on the driver’s side door. Owens speculated that Brown intended to make a U-turn at the end of the median.
Brown testified that just prior to the accident, she had left the parking lot of the credit union and was westbound along the curb closest to the credit union (farthest from the median). She stated that she was probably driving four or five miles an hour and was looking toward her right in the direction of the credit union drive-through exits to make sure that no cars were coming out of the drive-through onto Village Lane. Brown denied stopping her vehicle prior to the accident. Although she was moving |sslowly, she denied making any sudden movement to turn or merge into the left lane. She also denied intending to make any kind of U-turn. According to Brown’s testimony, she saw Owens’ vehicle in her side mirror “seconds before the impact,” and knew she was going to be hit. Brown stated that at the *642 time of impact, she was “more in the middle of the road,” merging into the one-lane area. Brown admitted that she did not look in her rearview mirror at that point. Brown confirmed that Owens’ vehicle struck the driver’s door.

Discussion

The trier of fact is owed great deference in its allocation of fault and may not be reversed unless clearly wrong. Clement v. Frey, 95-1119, 95-1163 (La.01/16/96), 666 So.2d 607; De Los Reyes v. USAA Casualty Insurance Co., 28,491 (La.App.2d Cir.06/26/96), 677 So.2d 668. Like the assessment of damages, fault allocation is a factual determination and the trier of fact, unlike the appellate court, has the benefit of viewing firsthand the witnesses and evidence. Clement, supra. Only after making the finding that the record supports that the lower court abused its great discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. Clement, supra; Hill v. Morehouse Parish Police Jury, 95-1100 (La.01/16/96), 666 So.2d 612; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).
The trial court applied only the presumption that a motorist in a rear-end collision has breached the duty of not following too closely. In this case, |40wens was driving the following vehicle. Although seeing Brown’s vehicle and Brown’s inattention, she continued on, believing in her right to do so. The trial court was right in finding that Owens was at fault.
On the other hand, Brown admitted that her attention was not focused on the traffic on Village Lane immediately prior to the accident. She did not look to her left or in her rearview mirror, but continued on at the location where the roadway narrowed to a single lane. As she moved forward, she did not see Owens’ vehicle. Under these factual circumstances, we conclude that Brown cannot be free of fault. We conclude that Brown breached the statutory duty to be an attentive driver and that this was a cause of the accident.
Having found that Brown was negligent and that her negligence was a legal cause of the accident, we are required to attribute fault to her in accordance with the legal principles set forth above. Finding that 50% is the lowest point which is reasonably within the discretion afforded to the trial court, we allocate 50% fault to Brown and reduce Owens’ fault to 50%.
Owens’ special damages were stipulated to be $4,850.17, including medical costs and property damage. Owens had pain in her back, neck, and wrist primarily during the first month following the accident. She saw a chiropractor for two months. Her pain was better during the second month; she was having no problems at the time of trial. However, she testified that for about six weeks after the accident she could not lift anything at her job as a waitress.
Is As previously noted, Owens’ special damages were stipulated to $4,850.17. To those damages, we add general damages in the amount of $2,500; both damage awards, of course, are subject to a 50% reduction for the fault apportioned to Owens.

Conclusion

For the reasons set forth above, the judgment of the trial court is reversed, and judgment is hereby rendered awarding Owens $4,850.17 in special damages and. $2,500 in general damages, both awards subject to reduction by the 50% fault as *643 sessed to Owens. Costs are assessed to defendants-appellees.
REVERSED AND RENDERED.