STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-1623


DONALD A. CROSS AND CYNTHIA C. CROSS

VERSUS

TIMBER TRAILS APARTMENTS, T.F. MANAGEMENT, INC., THOMAS L. FRYE, AND TIMBER TRAILS APARTMENTS II, A LOUISIANA PARTNERSHIP IN COMMENDAM


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 198425
HONORABLE HARRY F. RANDOW, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


J. DAVID PAINTER
JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses G. Thibodeaux, Chief Judge, J. David Painter, and James T. Genovese, Judges.

AFFIRMED.


Larry B. Minton
P.O. Box 13320
Alexandria, LA 71315
Counsel for Plaintiffs-Appellees
    Donald A. Cross and Cynthia C. Cross

Richard A. Rozanski
J.P. D'Albor
P.O. Box 13199
Alexandria, LA 71315
Counsel for Defendants-Appellants
    Timber Trails Apartments, T.F. Management, Inc., Thomas L. Frye, and
    Timber Trails Apartments II, a Louisiana Partnership in Commendam

**PAINTER, Judge.**

Defendants, Timber Trails Apartments, T.F. Management, Inc., Thomas L. Frye, and Timber Trails Apartments II, a Louisiana Partnership in Commendam ("Timber Trails"), appeal the trial court's judgment finding them 100% at fault in connection with the injury sustained by Donald Cross when he slipped on icy steps outside the apartment he rented from Defendants. We affirm.

**FACTS**

At the time of the accident, the Crosses were renting a second floor apartment at the Timber Trails Apartment complex in Ball, Louisiana. Mr. Cross was recuperating from heart surgery and was not working. Mr. Cross' wife, Cynthia, testified that when she left for work at 2:15 p.m. on December 22, 1998, the weather was cold and windy. Patsy Dewitt, the apartment manager, testified that when she left the complex after finishing work at 5:00 p.m. it was very cold. Mrs. Cross testified that she first found out that it was sleeting around 9:00 p.m., when someone at work told her. She further stated that when she left work that night, she had to pour hot water on her car to melt the ice. During the drive home, her car slid a couple of times because of ice on the road. She also slipped a little on the ice when she got out of her vehicle at the apartments.

Mr. Cross stated that he did not leave his apartment that day until he went outside onto the porch to look for his wife, who was late returning from work. He testified that it was cold and that, although there was moisture in the air, there was no accumulation of moisture on his porch or balcony. When Mr. Cross went out onto the porch to look for her, Mrs. Cross was just driving up. He testified that the light on the center of the storage unit above the stairs was out. Mr. Cross admitted that he

1

had previously used the stairs when the lights were out. He also admitted that he did not turn on the light outside his apartment door even though the other light was out. However, he explained that even had he turned on that light, the light would not have reached to the top of the stairs, because a storage unit at the top of the stairs jutted out and blocked the light from reaching the stairs. Mr. Cross called down to see if Mrs. Cross needed any help. He stated that he heard her answer that she did, but Mrs. Cross testified that she told him that she did not need any help. Mr. Cross stepped onto the top stair while holding onto the railing. The steps were icy, and his feet went out from under him. He fell down the stairs and was unable to get up. Although Mr. Cross testified that his usual behavior was to watch his step, he could not definitively say that he did so that night. His wife found him on the stairs. She discovered that, because of the ice, she could not safely maneuver the stairs on her feet and went up backwards on her buttocks. In her apartment, she called 911 then went back down and covered Mr. Cross with a blanket.

The Ball Fire Department, the Ball Police Department, and Acadian Ambulance came to the scene. Ms. Dewitt testified that the parking lot was illuminated by two CLECO maintained area lights. However, Mrs. Cross testified that one of those lights was out. She stated that she left her vehicle's headlights on to light the stairs, but that the light did not reach the top of the stairs.

Officer Carl Bordelon testified that when he arrived at the scene, Mr. Cross was mid-way down the stairs. According to Officer Bordelon, ice on the ground made walking difficult, but the ice was visible and apparent. However, Mrs. Cross testified that her car headlights were lighting the area when Officer Bordelon arrived. Officer Bordelon testified that he found ice on the stairs, which he removed with hot water.

2

The responders first took Mr. Cross back to his apartment where he was loaded onto a stretcher and taken by ambulance to St. Francis Cabrini Hospital Emergency Room. X-rays taken in the emergency room showed an acute bi-malleolar fracture. Mr. Cross was also diagnosed with back pain and posterior neck pain secondary to a muscle strain. The treating physician put a splint on Mr. Cross' left ankle and instructed him to use crutches.

When the Crosses arrived back at their apartment, Mrs. Cross was unable to help Mr. Cross up the stairs and called the Ball Police Department for help. Officer Bordelon came back to the apartments and helped Mrs. Cross melt the ice on the stairs so they could get Mr. Cross back upstairs. As it turned out, Mr. Cross was too heavy for Officer Bordelon to carry and he had to go up the stairs on his buttocks.

Mr. Cross testified that he did not know when the ice formed on the stairs. Ms. Dewitt testified that she first found out about the ice on the stairs and the accident when Mrs. Cross called her at her daughter's house the morning after the accident. Ms. Dewitt admitted that it was her responsibility to know about dangers such as ice, and stated that if she had been aware of the ice, she would have put out sand and salt and would have posted notices, particularly to the upstairs tenants. Mrs. Cross testified that, after being informed of the ice, Ms. Dewitt brought some rock salt to put on the stairs. A couple of days later, she sent sand to be put on the stairs. Mrs. Cross testified that, prior to the accident, she had notified Ms. Dewitt in written notes that the light at the head of the stairs and the CLECO-maintained area light were not functioning. Ms. Dewitt could not recall receiving the notes.

Plaintiffs filed suit asserting that Defendants were at fault in the accident because of their failure to correct the non-functioning light fixtures and that the ice

3

on the stairs created a hazardous condition. Prior to trial, the parties stipulated that damages would not exceed $50,000.00. As a result, the matter was tried to the court. After hearing evidence, the trial court found that the burned out lights caused a hazardous condition of which the apartment manager was aware. The court rendered judgment in favor of Plaintiffs finding Timber Trails to be 100% at fault in the accident. Timber Trails appeals.

**DISCUSSION**

On appeal, Timber Trails asserts that the trial court erred in finding that Plaintiffs were entitled to recover under theories of negligence, strict liability under La.Civ.Code art. 2317.1, or lessor liability under La.Civ.Code art. 2695.

The law applicable to an attempt to recover damages from an owner or person having custody of immovable property is well settled:

> The owner or person having custody of immovable property has a duty to keep such property in a reasonably safe condition. He must discover any unreasonably dangerous condition on his premises and either correct the condition or warn potential victims of its existence. This duty is the same under the strict liability theory of La. Civ.Code art. 2317 and the negligence liability theory of La. Civ.Code art. 2315. Under either theory, the plaintiff has the burden of proving that: (1) the property that caused the damage was in the "custody" of the defendant; (2) the property had a condition that created an unreasonable risk of harm to persons on the premises; (3) the unreasonably dangerous condition was a cause in fact of the resulting injury; and (4) the defendant had actual or constructive knowledge of the risk.

*Bozeman v. Scott Range Twelve Ltd. P'ship*, 03-903 (La.App. 1 Cir. 4/2/04), 878 So.2d 615, 619 (citations omitted). *See also Johnson v. Bellefonte Ins. Co.*, 449 So.2d 1134, 1137 (La.App. 3 Cir.), *writs denied*, 456 So.2d 164, 456 So.2d 165 (La.1984).

On appeal, Timber Trails disputes the trial court's findings with regard to the existence of a dangerous condition or risk of harm and with regard to whether it had notice of the dangerous condition, if any existed.

4

The trial court found the existence of an unreasonably dangerous condition in the burned out lights. The court further found that Timber Trails, in the person of its resident manager, had actual notice of the condition. The court also found that the lack of adequate lighting was the cause-in-fact of the accident. The trial court also noted the conflicting evidence both with regard to the burned-out lights and the notice requirement. However, the court stated:

> The Court is confronted with the differing testimony of the Crosses and the apartment manager, Ms. DeWitt regarding her knowledge as to the burned out lights. The Court accepts the testimony of Ms. Cross that she had informed Ms. DeWitt of the burned out light. This had occurred previously. Ms. DeWitt did not deny receiving a written note from Ms. Cross only that she did not recall receiving one. The Court is familiar with Officer Bordelon as a local law enforcement officer. In assessing his testimony regarding lighting on the night of the accident, the Court observed with some uncertainty as to whether the light was working that night. Further, the Court is mindful that Ms. Cross testified that she left her car lights on and that they illuminated partially the stairway where Mr. Cross fell. Accordingly, the Court finds that the porch light was not on nor was the CLECO dusk to dawn light near the Crosses' porch working.

"In situations involving a conflict in the testimony, reasonable determinations of credibility and reasonable inferences of fact should not be disturbed, even if the appellate court might consider its own evaluations and inferences to be as reasonable." *Cooper v. Louisiana State Dep't of Transp. and Dev.*, 03-1847, p. 8 (La.App. 1 Cir. 6/25/04), 885 So.2d 1211, 1216, *writ denied*, 04-1913 (La. 11/8/04), 885 So.2d 1142. The trial court's evaluations of credibility and findings of fact were reasonable. The finding that Plaintiffs' testimony established the existence of an unreasonably dangerous condition and that Defendants had notice of the condition is not manifestly erroneous. Having been presented with conflicting testimony concerning these elements, and in the absence of totally conflicting or implausible evidence or internal inconsistency that would contradict the witnesses' story, we must

5

accept the trial court's findings. *See Rosell v. ESCO*, 549 So.2d 840 (La.1989). Given the reasonable credibility evaluations made by the trial court, the record supports a finding that Defendants were negligent in failing to correct the lighting problems. Accordingly, we find no error in the trial court's determination that Defendants were at fault in the accident.

Finally, Defendants argue that the trial court erred in failing to attribute any of the fault for the accident to Plaintiffs.

> The trier of fact is owed great deference in its allocation of fault and may not be reversed unless clearly wrong. Like the assessment of damages, fault allocation is a factual determination and the trier of fact, unlike the appellate court, has the benefit of viewing firsthand the witnesses and evidence.

*Owens v. Brown*, 37,573, p. 3 (La.App. 2 Cir. 9/24/03), 864 So.2d 640, 642. *See also Duncan v. Kansas City S. Ry. Co.*, 00-0066(La. 10/30/00), 773 So.2d 670.

Given the conflicts in testimony, the record herein could have supported different conclusions with regard to fault. In light of its superior ability to evaluate the credibility of the witnesses, we defer to the trial court with regard to allocation of fault.

**CONCLUSION**

For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Defendants.

**AFFIRMED.**