666 So.2d 607 (1996)
Janice G. CLEMENT, as Provisional Curatrix of James C. Clement, and Charlene B. Thibodaux, as Natural Tutrix of the Minor Children, Brittany Renee Clement and Ashley Elizabeth Clement
v.
Melanie FREY, Louisiana Indemnity Company, and Louisiana Department of Transportation and Development (Office of Highways).
Melanie A. FREY
v.
LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT OFFICE OF HIGHWAYS.
Nos. 95-C-1119, 95-C-1163.
Supreme Court of Louisiana.
January 16, 1996.
Danny J. Lirette, Michael X. St. Martin, for Applicant in No. 95-C-1119.
James Robert Dagate, F. Hugh Larose, Boudreaux & Larose, Philip J. McMahon, Richard P. Ieyoub, Attorney General, Sidney F. Lewis, V, for Respondent.
James Robert Dagate, F. Hugh Larose, Boudreaux & Larose, for Applicant in No. 95-C-1163.
Danny J. Lirette, Michael X. St. Martin, Philip J. McMahon, Richard Phillip Ieyoub, Attorney General, Sidney F. Lewis, V, for Respondent.
CALOGERO, Chief Justice.[*]
We granted writs in this case[1] to consider how fault should have been allocated by the *608 court of appeal, after it determined that the district court's allocation of fault was manifestly erroneous, or clearly wrong. The court of appeal in this case performed a de novo review and thereupon apportioned fault as it perceived was warranted based on the record.[2] Thereafter, plaintiffs filed writ applications with this Court, which were granted.
Under the facts of this case and for the reasons set forth below, we reverse. The court of appeal was correct in finding that the district court's 95-5 allocation of fault was clearly wrong. However, rather than simply fixing the percentages, the court of appeal should have given some deference to the district court and decreased the DOTD's 95% fault to the highest reasonable percentage, while correspondingly increasing the fault of the driver, Frey, to the lowest reasonable percentage within the discretion of the district court. We decide here for the first time that the court of appeal's fixing a fault percentage in its unfettered discretion, with no deference whatever to the district court's finding, was improper.
On November 23, 1992, at approximately 4:00 p.m., on Louisiana Highway 309 in Lafourche Parish, a vehicle driven by Melanie A. Frey crossed the center line and collided head-on with a vehicle driven by James C. Clement ("Clement"). Highway 309 is a two-lane highway traversing the Chacahoula Swamp in Terrebonne Parish. The highway does not have any edge striping and the shell shoulder varies between one and three feet in width and slopes down toward the swamp. On the date of the accident, there were ruts along the edge of the paved surface, ranging from two to five inches deep, and it had been raining intermittently.
At the time of the accident, Frey was returning from her child's haircut appointment. As a result of the collision, Clement's vehicle went into a canal alongside the high-way and both Frey and Clement suffered serious injuries. Because Clement suffered organic brain damage and was interdicted, his mother, Janice G. Clement ("Mrs. Clement") was named his curatrix.
Thereafter, Mrs. Clement filed suit on Clement's behalf against Frey, Frey's liability insurer, Louisiana Indemnity Company ("LIC"), and the Louisiana Department of Transportation and Development ("DOTD"), alleging that the negligence of the DOTD and that of Frey caused the accident. Charlene B. Thibodaux had lived with Clement for six years. They had two children, Brittany Renee Clement and Ashley Elizabeth Clement. Thibodaux, as natural tutrix of Clement's minor children, joined in Mrs. Clement's suit seeking damages on the children's behalf. McDermott Incorporated ("McDermott") intervened to recover hospital, medical, and weekly indemnity benefits which they had paid Clement, and to which they were conventionally subrogated.[3]
Additionally, Frey filed a separate lawsuit against DOTD, alleging as did defendants that the DOTD had notice but did not repair Highway 309 properly and timely. Then, LIC, Frey's liability insurer, filed a concursus proceeding and deposited its $10,000 policy limit into the registry of the court, impleading Mrs. Clement, Thibodaux, and McDermott. Subsequently, the three suits were consolidated.
After a bench trial, the district court found that the DOTD was 95% at fault and Frey 5%. The court found Frey's total damages were $142,283.55, Clement's damages were $4,465,488.84, and the two Clement children's damages were $150,000.00 each. The award against LIC was limited to the liability insurance policy amount and McDermott was awarded judgment on its intervention claim for hospital, medical, and indemnity expenses paid to and on behalf of Clement.
*609 On appeal, the court of appeal found that the district court's allocation of fault was clearly wrong and reapportioned fault equally, 50% to the DOTD and 50% to Frey (with 0 fault to Clement). In reaching its decision, the First Circuit stated that "[i]f such a finding is determined to be clearly wrong, a de novo review of fault must be made." There are other court of appeal cases, however, which apply the Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1977), highest/lowest formula. We need in this case to resolve this conflict among the circuits.
For instance, the Second Circuit Court of Appeal in Finley v. North Assurance Co. of America, 476 So.2d 837, 849-50 (La.App. 2d Cir.1985), held that when we increase or decrease damages awarded by a trial court we do so in accord with the directions of Coco v. Winston, 341 So.2d at 335 (stating that appellate courts should adjust a quantum award only to the extent of lowering or raising it to the highest or lowest point reasonably within the trial court's discretion). "In modifying a trial court's allocation of negligence... we see no reason why such directions are not analogous and proper." Finley, 476 So.2d at 850.
The court in Starnes v. Caddo Parish School Board, 598 So.2d 472, 478 (La.App. 2d Cir.1992), stated that in modifying a trial court's allocation of fault, we decrease fault to the highest percentage or increase fault to the lowest percentage that the court of appeal would have affirmed. See also Stephens v. Town of Jonesboro, 25,715 (La.App. 2d Cir. 8/19/94), 642 So.2d 274, writ denied, 94-2351 (La.1994), 646 So.2d 400; Devereux v. Allstate Insurance Co., 557 So.2d 1091, 1095 (La.App. 2d Cir.1990); Carpenter v. Hartford Fire Insurance Co., 537 So.2d 1283, 1288 (La.App. 2d Cir.1989); Ogden v. Dalton, 501 So.2d 1071, 1074 (La.App. 2d Cir.1987).
Similarly, the Third Circuit Court of Appeal in Breaux v. Wal-Mart Stores, Inc., 93-1035 (La.App. 3d Cir. 4/6/94), 635 So.2d 667, 671, writ denied, 94-1098 (La.1994), 640 So.2d 1347, held that "[w]hen an appellate court finds a jury's assessment of fault too high, it should be reduced to the highest percentage which it would have affirmed as reasonable within the jury's discretion." See also Bergeron v. Wal-Mart Stores, Inc., 617 So.2d 179, 181 (La.App. 3d Cir.), writ denied, 619 So.2d 1065 (1993).
On the other hand, the First Circuit Court of Appeal in this case and in Cornish v. State, Department of Transportation and Development, 93-0194 (La.App. 1st Cir. 12/1/94), 647 So.2d 1170, 1182, writ denied, 95-0547 (La. 5/5/95), 654 So.2d 324, held that if the trier of fact is clearly wrong in apportioning fault, then that finding should be dismissed at the outset and a de novo review made by the court of appeal. That same First Circuit, just four years earlier, had to the contrary modified a fault assessment by reducing it to the highest percentage a reasonable finder-of-fact could have found. Wells v. Winn-Dixie Louisiana, Inc., 572 So.2d 210 (La.App. 1st Cir.1990). See also Scott v. Barclay's American Leasing Service, 506 So.2d 823, 829 (La.App. 1st Cir.), writ denied, 508 So.2d 88 (1987).
Regarding the allocation of fault in this circumstance, we adopt the standard set forth in Coco v. Winston Industries, Inc., 341 So.2d at 335. Just like in the quantum area, there is for sure a large amount of uncertainty in the allocation of fault. Our Coco decision pointed out that "the ultimate determination by an appellate court as to whether a given judge or jury abused their `much discretion' as a matter of law is a judgment call." 341 So.2d at 335.
The Court in Coco held that "[o]nly after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court." 341 So.2d at 335. "It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence." Id.
Fault allocation is of course distinct from quantum assessments. And, of course the Coco court relied, in part, on LA.CIV.CODE art. 1934(3) (1870), which provided "[i]n the assessment of damages under this rule, as *610 well as in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury."[4] The rationale for this rule is that the trier of fact has more direct contact with the parties, the witnesses, and the evidence and thus can better evaluate the true extent of plaintiff's injury, whereas the court of appeal bases its decision solely on the written record, briefs, and oral argument. Ernest L. Nix, Jr., Appellate Review of Damage AwardsAn Affirmation of the Trial Court's "Much Discretion," 38 LA. L.REV. 628, 629 (1978).
Moreover, two other considerations influenced the Coco rule. First, the trial court is in the best position to weigh the claimant's testimony. Frank L. Maraist, Procedure, 38 LA.L.REV. 503, 511 (1978). Secondly, "repeated substitution by an appellate court of its own opinion as to quantum for that of the trial court, when combined with other appellate practices inherent in the Louisiana system of appellate review of law and fact, may have a demoralizing effect upon a trial judge in his assessment of his role in the judicial process." Id.
Additionally, this Court has stated that "[s]ince an award of damages for personal injuries is of necessity somewhat arbitrary and also must vary greatly with the facts and circumstances of each case, the trial court is entrusted with large discretion making such awards, which discretion should not be disturbed on appellate review." Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, 160 (1963).
Each of the foregoing considerations, except the presence of Civil Code article 1934(3), are just as applicable in the fault allocation process. And equally applicable to the two situations is Louisiana's appellate review of law and facts,[5] as construed and applied by the jurisprudence of this Court. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Arceneaux related that "an appellate court should not disturb such a finding of fact unless it is clearly wrong." 365 So.2d at 1333. Fact-finders are better able to decide factual issues. Hence, we have said jurisprudentially that appellate courts should not decide facts on a clean slate, but should give deference to the trier of fact.
Based upon the foregoing, we feel that by analogy the trier of fact is owed some deference in allocating fault, for the finding of percentages of fault pursuant to the comparative fault article, LA.CIV.CODE art. 2323,[6] is also a factual determination. Hill v. Lamulle, 506 So.2d 690, 694 (La.App. 5th Cir. 1987) (citing Varnado v. Continental Insurance Co., 446 So.2d 1343 (La.App. 1st Cir. 1984); Motton v. Travelers Insurance Co., 484 So.2d 816 (La.App. 1st Cir.1986)). That there is in the Louisiana Civil Code regarding fault allocation no counterpart to the 1870 Civil Code article 1934's "great discretion" for the assessment of damages is no doubt explained, at least in part, by the fact that fault allocation was not made necessary in Louisiana until August 1, 1980, when by Act No. 431 of 1979 our legislature adopted a pure comparative fault system. "This allocation of shares of negligence, however, is not an easy task for the factfinder, and the Louisiana statute does not describe with particularity how it should be accomplished." Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 971 (La.1985).
In any event, there is an analogy between excessive or inadequate quantum determinations and excessive or inadequate fault percentage determinations. In both, the trier of fact, unlike the appellate court has had the *611 benefit of witnessing the entire trial and of reviewing first hand all the evidence.
Accordingly, we will apply the standard enunciated above in reallocating fault. After the court of appeal finds a "clearly wrong" apportionment of fault, it should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion.
The court of appeal's outset determination in this case that the district court was clearly wrong in its 95-5 allocation of fault is a matter with which we have already expressed agreement. This Court and the courts of appeal have each been guided, in this regard, by the Watson factors, where we said:
... the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct and the damages claimed.
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct result from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff and considerations in determining the relative fault of the parties.
469 So.2d at 974. These same factors guide our decision as to the highest percentage the court could reasonably assess the DOTD and, correspondingly, the lowest percentage it could reasonably assess to Frey.
In applying these factors to the case under consideration, we conclude that the DOTD was no less at fault, and probably more so at fault than Frey. Frey's conduct in negligently straying on to the shoulder and trying to return to the road was more likely than not inadvertent. At the time of the accident, Frey was on her way home from her child's hair appointment, was not speeding, and was not intoxicated. Plus, her capacity as a motorist to prevent this type of an accident was inferior to that of the DOTD. Frey was not responsible for the road's maintenance. The deposition of an Oryx Energy employee, who was familiar with Highway 309 because he worked in the area, stated that he had seen Highway Department trucks along the highway, but never doing work on the shoulder. We also have the testimony of a Mr. Welton Keyes, an eyewitness, who was in the automobile directly in front of Frey. He testified that they were traveling at about forty to forty-five miles an hour at the time of the accident. He saw Frey run off the highway on the right side and then lose control as she reentered the highway.
Further, Frey, a school teacher travelling with her small child, likely was frightened by the threat of driving into the swamp if she did not quickly return to the highway. After all, she was driving on a one to three foot shoulder and could see a vehicle near an intersection not far ahead was in her path. Also, generally a significant risk is not presented each time a motorist drives onto a shoulder because the shoulder is usually even with the highway.
In this case, there was testimony concerning the drop off between the highway and the shoulder. Mr. Hubert J. Daigle, an independent eyewitness to the accident, testified that the ruts along Highway 309 on the shoulder where Frey ran off the road were anywhere from six to eight inches deep. Further, "he was positive that the right front tire [Frey's] came off the road."
In contrast, the DOTD had notice of the poor condition of Highway 309, but failed to repair it. The DOTD is responsible for maintaining our roads and shoulders in a safe condition. State workers traveled Highway 309 frequently, and they were aware of motorists' complaints. Mr. Stan L. DiGiovanni from the Highway Department testified that he gave priority to ruts that were two inches or greater and top priority to those five inches or greater. However, he testified that even top priority matters may take longer *612 than thirty days to repair. He also identified daily work sheets which proved that no work was done on the shoulder of the road from November 1991 to November 1992.
As earlier related, our conclusion is that the DOTD was no less at fault, and probably more so at fault than Frey. We do find, however, that the trial court's allocation (95% to the DOTD and 5% to Frey) was clearly wrong and we agree with the court of appeal's statement that the "DOTD was clearly not nineteen times more at fault than Frey." Charged as we are with establishing the high/low range that would constitute a reasonable conclusion by the district court and mindful of the deference we must give the trier of fact, we hold that the DOTD was no more than 75% at fault, but at least 50%. Correspondingly, we find that the district court was clearly wrong to assess Frey only 5% of the fault. Rather, we find that Frey was not less than 25% at fault, but no more than 50% at fault. Accordingly, we increase Frey's fault from 5% to 25%, which is the lowest amount the district court could have reasonably allocated to Frey.
For the foregoing reasons the decision of the court of appeal insofar as it found both the DOTD and Frey at fault and thus liable is affirmed. However, we reverse regarding the percentages of fault of the two defendants. The DOTD and defendant Frey are determined to be at fault, 75% and 25%, respectively. The case is remanded to the district court to confect appropriate monetary judgments based upon the fault percentages and upon the gross damages awarded.
AFFIRMED IN PART, REMANDED.
LEMMON, J., subscribes to the opinion and assigns additional reasons.
LEMMON, J., concurring.
The fact finder's clearly wrong allocation of fault in this case was an abuse of discretion. When there is an abuse of discretion in allocating fault, just as when there is an abuse of discretion in fixing quantum, the court of appeal still owes deference to the fact finder's determination. As noted by the majority, this deference to the trial court is due, not only because of the better capacity of the trial judge or jury to evaluate live witnesses, but also because of the proper allocation of functions between the trial and appellate courts. Canter v. Koehring Co., 283 So.2d 716 (La.1973). The function of finding facts is allocated to the trial judge or jury, and allocation of fault is a finding of fact.
I write separately to point out that a de novo review, without any deference to the fact finder, is only appropriate when there is legal error implicit in the fact finding process or when a mistake of law forecloses the fact-finding process, such as when the fact finder's decision has been tainted by an improper and prejudicial jury instruction or erroneously admitted prejudicial evidence. Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975); Lasha v. Olin Corp., 625 So.2d 1002 (La.1993); McLean v. Hunter, 495 So.2d 1298 (La.1986). An abuse of discretion in allocating fault or fixing quantum does not so taint the fact-finding process that the fact finder's decision is not entitled to any deference.
NOTES
[*] Judge Burrell J. Carter, Court of Appeal, First Circuit, sitting by assignment in the vacancy created by the resignation of Dennis, J., now a judge on the United States Court of Appeals for the Fifth Circuit. Carter, J., recused, was not on panel. Rule IV, Part 2, § 3.
[1] This case and Jerry Wayne Hill v. Morehouse Parish Police Jury, 95-C-1100, 666 So.2d 612 (La. 1/16/96) were consolidated for oral argument. See the separate opinion rendered this day in that case.
[2] The district court assessed 95% of the fault to the DOTD and 5% to the automobile driver, defendant Frey (plaintiff in this consolidated lawsuit). The court of appeal, however, determined that both the DOTD and Frey were 50% at fault.
[3] Prior to trial, the parties stipulated that McDermott's subrogation right was for the full amount of hospital/medical expenses and indemnity benefits, $401,696.49 and $8,650.00 respectively.
[4] Currently, there are two separate articles that contain basically the same language as LA.CIV. CODE art. 1934(3) (1870). Article 2324.1 provides that "[i]n the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury." LA.CIV.CODE art. 2324.1. See also LA. CIV.CODE art. 1999.
[5] The Constitution of 1974 provides:

(B) Scope of Review. Except as limited to questions of law by this constitution, or as provided by law in the review of administrative agency determinations, appellate jurisdiction of a court of appeal extends to law and facts.
LA. CONST. art. V, § 10(B).
[6] Article 2323 of the Louisiana Civil Code was amended in 1979 to introduce the concept of comparative negligence in lieu of contributory negligence. LA.CIV.CODE art. 2323 (West 1995).