| Judge MAX N. TOBIAS, JR.
In this personal injury case, the defendant, the Sewerage and Water Board of New Orleans (“S & WB”), appeals from a trial court judgment in favor of the plaintiff, James Jolly. In rendering judgment, the trial court held the S & WB 100% at fault for the injuries sustained by the plaintiff when he fell into a hole at a S & WB work site. It awarded the plaintiff $75,000.00 in general damages and $12,700.44 in medical expenses.
On appeal, the S & WB argues the trial court erred in finding it at fault in causing the accident. Specifically, it claims the trial court faded to consider the evidence that the S & WB employees had secured the work site by placing wooden planks, barricades, yellow caution tape, and lights on and around the hole to warn persons of the hazard. It also argues that the trial court failed to consider the plaintiffs medical records that indicated he was intoxicated when he was admitted into the emergency room following the accident.
On 7 August 1996, the plaintiff called the S & WB to report a depression in the sidewalk in front of his home at 3222 Bau-din Street. The following day a |3S & WB work crew inspected the site, conducted a dye test and discovered a broken sewer line and sewer house connection. Several days later, on 13 August 1996, the S & WB work crew returned to the site and excavated a portion of both the street and sidewalk in front of the plaintiffs house to make the needed repairs. The excavation left a hole measuring approximately six feet deep in front of the front gate to the plaintiffs yard; approximately two feet of ground lay between the front gate and the edge of the hole. The excavation work did not obstruct the gate to the plaintiffs driveway, which was a few feet from the front gate. Because problems at the main sewer station prevented the S & WB from completing the repairs, on 14 August 1996, the work crew placed wooden planks, barricades, caution tape and lights in and around the hole to secure the site until they could return to finish the job.
At trial, the plaintiff testified that he and his nephew, Robert Trapani, were returning to his home between 12:30 and 1:00 a.m. on 19 August 1996, after purchasing hamburgers. Rather than enter his yard through the unobstructed driveway gate, the plaintiff attempted to enter through the front gate. As he walked on the grassy area between the front gate and the hole, the ground beneath him collapsed, causing him to fall into the hole. Mr. Trapani called the emergency medical technicians, who pulled the plaintiff from the hole and transported him to Charity Hospital, where he remained until 20 August 1996. The plaintiff denied that he was drunk or had been drinking the night of the accident.
l.gMs. Moya Malbrue, the plaintiffs next door neighbor for twenty-two years, testified that she had witnessed the accident. According to her, the plaintiff was attempting to open his front gate when “he went down” into the hole. She empha *900 sized that he did not stumble or trip. Ms. Malbrue testified that she had never known the plaintiff to drink, and that he did not appear to be drunk the night of the accident. On direct examination, Ms. Mal-brue testified that she complained to the S & WB workers that the hole posed a hazard because it was not completely covered. She also denied that any barricades were in place at the excavation site at the time of the accident. However, on cross-examination, Ms. Malbrue clarified that barricades were in place on the street but not on the sidewalk. She also admitted that the S & WB workers had placed yellow caution flags and tape around the hole.
Mr. Trapani corroborated the plaintiffs testimony that the ground beneath him collapsed as he approached his front gate. As a result, the plaintiff fell into the hole, hit his head on an exposed pipe, and was rendered unconscious. He testified that his uncle did not drink on the night of the accident. Reviewing defense exhibits 1-10, photographs of the excavation site taken the day after the accident, Mr. Trapani testified that they did not depict the excavation site as it existed the night of the accident. He denied that barricades were in place on the sidewalk at the time. He did acknowledge that two barricades with lights were on the street and the area was marked with yellow tape. He also testified that several wooden planks were placed over the hole near the street.
|4Michael Phillips, a Supervisor 1 and equipment operator for the S & WB, testified that he and several other S & WB employees started to repair the sewer line and sewer house connection in front of the plaintiffs Baudin Street house. He testified that they were unable to complete the job, so they secured the excavated area by placing four barricades around the site, one on each end of the sidewalk and two in the street. They marked the area using yellow caution tape, which was connected to the barricades. The two street barricades had attached flashing lights. He testified that the workers dumped seven yards of sand at the site, placed eight wooden planks over the hole and surrounding area, and placed a- six foot long, six-inch diameter pipe over the wooden planks. Mr. Phillips reviewed the defense photographs and testified that they did not depict the site as his crew left it on the 14 August 1996. According to him, the photographs indicated that the barricades had been moved, and three yards of sand and six boards were missing. Also, the pipe was moved to the plaintiffs driveway. He further testified that when he and the other S & WB workers returned on 20 August 1996 to complete the repair job, the site was no longer intact. The barricades were not in place, and some of the sand and several wooden planks were missing. Clearly, the site had been altered.[1] Mr. Phillips also recalled seeing the plaintiff exit his yard by way of the driveway gate on one occasion while at the job site.
Clarence Plains, Emergency Water Inspector for the S & WB, testified that he received a call in the early morning of 19 August 1996 that someone had fallen | «¡into a hole at the S & WB work site on Baudin Street. He immediately went to the site, arriving at 1:57 a.m. He inspected the site and found it completely secure. According to him, the barricades, lights, caution tape, and boards were all in place. Because the site was completely secure, Mr. Plains called the S & WB dispatcher to verify the complaint. The dispatcher reiterated that *901 someone reported that a man fell into the hole. Mr. Plains re-inspected the site and found it secure. On cross-examination, he reviewed defense exhibits 1-6 and testified that they did not depict the site as it existed at his inspection the morning of 19 August 1996.
It is well settled that an appellate court should not disturb a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong, and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Rosell v. ESCO, 549 So.2d 840 (La.1989).
In the absence of reasons for judgment and after reviewing the evidence in the record, we cannot say the trial court was clearly wrong in determining the S & WB was at fault in causing the plaintiff’s accident. The testimony from the plaintiff, two eyewitnesses, and S & WB personnel, in addition to the photographs, clearly disclose that the excavation site posed a danger to passing pedestrians and motorists. Even accepting as true Mr. Phillips’s testimony regarding the methods used by the S & WB workers to secure the site, we surmise extending the yellow 1 ^caution tape from the street barricades to the plaintiffs fence might have prevented pedestrians from walking between the fence and the hole.
Although we uphold the trial court’s finding of liability on the part of the S & WB, in view of the evidence, we find that the plaintiff bears some responsibility for the accident and the trial court erred in not allocating a portion of the fault to him.
In Watson v. State Farm and Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La.1985), the Louisiana Supreme Court set forth five factors to be considered in apportioning fault: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) the extent of the risk created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
In this case, the plaintiff testified that the S & WB excavation site had been in front of his house for several weeks[2] and that only one and one-half to two feet of grassy space existed between his fence and the deep hole. He acknowledged the presence of barricades and yellow caution tape. Additionally, he admitted that it was dark at the time, and no street light was in front of his house to illuminate the area. The plaintiff also asserted that the ground was wet due to rain the day before. The hospital discharge summary states that the plaintiff was “obviously drunk” |7when he was admitted to the hospital, but nothing else in the medical records indicates that he was intoxicated at the time of the accident.[3] The plaintiff, however, acknowledged that he had taken his prescribed medication the night of the fall. In any event, the record indicates that the plaintiff could have easily and safely entered his yard through his driveway gate, but chose not to do so. Furthermore, the excavation site was not a hidden danger and certainly *902 posed no threat to persons who avoided it. In view of these factors, we find that the plaintiff was negligent in not exercising greater care under the circumstances.
Thus, after reviewing the evidence and making every credibility call in favor of the plaintiff, we reduce the percentage of fault attributable to the S & WB to the highest degree of fault a reasonable fact-finder could have found, and raise the percentage of fault attributable to the plaintiff to the lowest percentage a reasonable fact finder could have found. See Clement v. Frey, 95-1119, 95-1163 (La.1/16/96), 666 So.2d 607. We find that an appropriate allocation of the fault is 65% to the S & WB and 35% to the plaintiff.
Lastly, the S & WB argues that general damage award is excessive and an abuse of the trial court’s discretion.
At the time of the accident, the plaintiff was disabled due to a work-related accident in 1986. Also, he had undergone a cervical disc fusion in 1993 after sustaining injuries in a car accident. As a result of the fall, the plaintiff received multiple bruises, was rendered unconscious, and spent two days in the hospital. | sAfter his discharge, the plaintiff continued to complain of headaches and pains in his neck, chest, arm, lower back, and legs. Norman Ott, M.D., diagnosed the plaintiff with having concussion syndrome, post-traumatic headaches, cervical strain aggravating chronic cervical symptoms, lumbar strain aggravating chronic lumbar symptoms, abrasion and bruising of the biceps, and impact injury to his ribs. Dr. Ott prescribed pain medication, physical therapy, and restricted the plaintiffs activities. On the recommendation of Dr. Ott, Kenneth Vogel, M.D., a neurosurgeon, examined the plaintiff. Dr. Vogel had the plaintiff undergo MRI scans of the lumbar and cervical spines. He determined that the fall aggravated the plaintiffs pre-existing cervical and lumbar conditions. In addition to the cervical and lumbar pain, at the time of trial, the plaintiff continued to suffer from depression, headaches, tinnitus, vision problems, and memory loss.
The trier of fact is given much discretion in the assessment of damages. La. Civ.Code art. 2324.1. Upon appellate review, damage awards will be disturbed only when a clear abuse of discretion has occurred. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). That discretion is vast and should rarely be disturbed unless it is, in either direction, beyond that which a reasonable factfinder could assess under the particular circumstances. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, Maritime Overseas Corp. v. Youn, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
• After reviewing the evidence in the record, we find no abuse of the trial court’s discretion in determining general damages and decline to disturb the award.
| (^Accordingly, for the foregoing reasons, the judgment of the trial court is amended to reapportion fault at sixty-five percent (65%) to the S & WB and thirty-five percent (35%) to the plaintiff. As amended, the judgment is affirmed. Costs of this appeal are to be paid equally by the S & WB and the plaintiff.
AMENDED AND, AS AMENDED, AFFIRMED.
ARMSTRONG, J., dissents with reasons.
JONES, J., dissents for the reasons assigned by ARMSTRONG, J.

. In all likelihood, the site was altered to some extent to remove the plaintiff from the hole.

. The S & WB introduced into evidence work orders indicating the excavation work began on the 13 August 1996.

. We note that blood tests and urinalysis taken of the plaintiff following the accident are silent with respect to alcohol intoxication.