[, PEATROSS, J.
This appeal arises from an automobile accident that occurred in March 2001 when a vehicle being driven by Joshua Carroll was forced from the roadway by another vehicle driven by a phantom driver which crossed into Joshua’s lane of travel. After leaving the highway, Joshua’s vehicle collided with a third vehicle parked on the premises of Ward Chevrolet Olds, Inc, (‘Ward”). In October 2001, Ward filed suit against John S. Carroll, who is the father of Joshua B. Carroll, and against State Farm Automobile Casualty Insurance Company, which insured the vehicle Joshua was driving. After trial on the merits, the court assessed no fault to Joshua and found the phantom driver to be one hundred percent at fault in causing the accident; Ward appealed. For the reasons stated herein, we affirm the trial court’s judgment.

FACTS

The accident in this case occurred at approximately 9:00 p.m. on March 25, 2001, as Joshua Carroll was driving south on U.S. Highway 165 in Caldwell Parish in a 1979 Ford Bronco. Sandy Caraway was Joshua’s only guest passenger. Joshua, who was 16 years old at the time of the accident, testified that he was driving at or below the speed limit which he stated was 40 miles per hour. He indicated that he and Sandy were not having a conversation at the time and that no music was playing in the vehicle. Just before the accident, Joshua saw headlights approaching in the opposite lane, and then saw the headlights move over into his lane until all four tires of the oncoming vehicle were in Joshua’s lane. Joshua initially reacted by gradually moving over toward the shoulder, thinking that the |?,driver of the oncoming vehicle would realize that he or she was crossing the center line and return to the northbound lane. Once it was clear, however, that all four tires of the oncoming vehicle were in his lane of travel, Joshua was forced to swerve completely onto the shoulder of the road. According to Joshua, the oncoming car never came onto the shoulder, but Joshua did not have room to continue traveling on the shoulder when he reached the Ward dealership because there were show cars “parked on the shoulder.” Joshua testified that he attempted to get around the line of show cars by aiming for a lane in the dealership’s parking lot behind the line of cars. He was, however, headed towards a fence in the dealership parking lot where other show cars were lined against the back wall of the service garage and the fence. This line of cars required Joshua to also attempt to steer to avoid them, and, in doing so, the driver’s side headlight of his vehicle struck the rear portion of a black truck parked at the Ward dealership.
Sandy, Joshua’s passenger, corroborated Joshua’s testimony by stating that, as he and Joshua were traveling south, a truck traveling north, came into Joshua’s lane and had all four wheels in the southbound lane. Joshua then swerved to miss the vehicle and hit a truck in the Ward dealership parking lot. Sandy responded in the *603 negative when asked whether Joshua was speeding, whether Joshua was talking when the accident occurred, whether music was playing at the time and whether Sandy observed any careless or reckless driving by Joshua prior to the accident. Further, Sandy identified the phantom vehicle as a light-colored 13Chevy truck with a chrome-colored toolbox in the back. After the accident, Sandy saw the truck at a carwash north of the dealership.
Sandy was also asked whether, as the phantom vehicle moved into Joshua’s lane, there was enough room for Joshua to travel down the shoulder of the road. Sandy responded in the negative. He also responded in the negative when asked whether he observed any other action that Joshua could have taken other than swerving into the parking lot and hitting the Ward truck.
Jesse Butler was driving his vehicle behind Joshua’s vehicle that night and saw the accident occur. Jesse testified that a truck pulled in front of Joshua and that Joshua veered to the right to avoid hitting it. In doing so, “he turned again and he hit the truck.” Jesse saw Joshua’s brake lights being applied, but had no idea how fast he was going at the time of the accident. Jesse further stated that he did not observe Joshua’s vehicle being operated in any reckless or careless manner before the accident. Jesse’s testimony agreed with the testimony of Sandy that the phantom vehicle turned into the carwash north of the dealership after it had forced Joshua off the road.[1] Jesse also indicated that he saw no other option available to Joshua other than striking the phantom vehicle or going off into the Ward dealership parking lot.
Caldwell Parish Sheriffs Office Deputy Billy Varnell investigated the accident that night. As a result of his investigation, he determined that |4Joshua’s vehicle had been heading south on Highway 165 and had “come off at an angle going into the [Ward dealership] parking lot.” He saw no skid marks left in the parking lot by Joshua’s vehicle. According to Deputy Varnell, the witnesses’ stories were “pretty consistent” in stating that a tan or possibly white pickup truck ran Joshua’s vehicle off the road. Deputy Varnell responded affirmatively when asked if there was ample room between the front of the Ward dealership truck and the southbound lane of U.S. 165 for Joshua’s vehicle to make an evasive maneuver without striking any vehicles in the Ward parking lot.
Dennis Ledbetter, general manager of the Ward dealership, went to the scene of the accident after receiving a call from the sheriffs department. He arrived before the vehicles had been moved. Mr. Ledbet-ter indicated that the only tire marks he saw were from the Ward truck that had been moved sideways by the impact. Mr. Ledbetter testified that there was a lane behind the truck of sufficient width for Joshua to travel and return to the roadway if Joshua’s vehicle had been traveling “at an average speed.” According to Mr. Led-better, the paved shoulder adjacent to the southbound lane of the highway was 7 feet wide and the front end of the Ward vehicle was 21 feet from the edge of the shoulder, making the distance from the edge of the highway to the truck approximately 28 feet. Mr. Ledbetter, a former state trooper, had stepped off these distances and stated that they were accurate within a foot one way or the other.
*604 The only other witness to testify at trial was Ronnie Ward, the owner of the dealership. Mr. Ward confirmed the measurement of 28 feet available lRfor Joshua to take evasive action. The great majority of Ward’s testimony, however, concerned the amount of damages suffered by the dealership as a result of the accident that damaged the truck.
In written reasons for judgment, the trial court noted that the testimony of Sandy, Jesse and Joshua revealed that Joshua had no alternative but to swerve to the right into the parking lot of the dealership to avoid a head-on collision. The trial court also noted that the witnesses testified that Joshua was traveling within the speed limit and in a careful manner prior to the accident. Although the trial court noted the testimony indicating that the Ward vehicle was approximately 28 feet from the fog line of Highway 165, and that it had been suggested that Joshua could have traveled along the shoulder within the 28 feet instead of striking the Ward vehicle, the trial court concluded that such an argument failed to recognize Joshua was faced with an unexpected, emergency situation. The trial court stated that Joshua did not have time to assess all the possible alternatives for evasive action and the court did not find that Joshua operated the vehicle in a negligent manner.

DISCUSSION

On appeal, Ward contends that the trial court was manifestly erroneous or clearly wrong in concluding that the phantom driver was one hundred percent at fault. Ward states that 28 feet of paved area were left available to Joshua to avoid the phantom vehicle. Furthermore, Joshua acknowledged that he saw the vehicle drift into his lane while the oncoming vehicle was still quite some distance away and that Joshua allowed his |fivehicle to then drift onto the shoulder of the road. According to Ward, Joshua had ample opportunity to observe the need for evasive action, ample space to take evasive action without striking any vehicles in the Ward parking lot, or, in the alternative, ample opportunity to stop his vehicle prior to the need for any evasive action.
Principles of comparative fault are set forth in Article 2323 of the Louisiana Civil Code, which states in pertinent part:
a. In any action for damages where a person suffers injury, death, or a loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, ... or that the other person’s identity is not known or reasonably ascertainable. (Emphasis added.)
A fact finder may attribute a percentage of fault to a party or nonparty only after it has determined that the party or nonparty is negligent and that his negligence was a legal or proximate cause of the accident. La. C.C.P. art. 1812(C)[2]; Efferson v. State, Through Department of Transportation and Development, 463 So.2d 1342 (La.App. 1st Cir.1984), writs denied, 465 So.2d 722 (La.1985) (the apportionment of fault under our comparative negligence scheme, or otherwise, is a factual determination which must be made once the fault of each party and causation have been established.)
Further, in Dupree v. City of New Orleans, 99-3651 (La.8/31/00), 765 So.2d 1002, the Louisiana Supreme Court affirmed the trial court judgment imposing *605 one hundred percent liability upon the Sewage and |7Water Board, and refusing to allocate any fault to the plaintiff who struck a cave-in on a street in New Orleans, lost control of his vehicle and suffered severe injuries. With respect to the allocation of fault, the court stated:
The trier-of-fact is owed great deference in its allocation of fault. Even if the reviewing court would have decided the case differently had it been the original trier-of-fact, the trial court’s judgment should be affirmed unless manifestly erroneous or clearly wrong. Clement v. Frey, 95-1119 c/w 95-1163 (La.1/16/96), 666 So.2d 607, 610. In determining percentages of fault, this Court has stated that the trier-of-fact must consider both the nature of the conduct of all parties and the extent of the causal relationship between the conduct and the damages claimed. We have outlined five factors that may influence the degree of fault assigned: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances that might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967, 974 (La.1986).
On the record before us, we find no manifest error on the part of the trial court in finding that Joshua was not negligent and, therefore, was free of fault in the accident. Joshua acted reasonably in moving toward and onto the shoulder, thinking that the oncoming driver might realize that he had crossed into the opposing lane. Furthermore, we agree with the trial court that Joshua was faced with an unexpected, emergency situation that did not give him time to assess all possible alternatives for evasive action. While the record does establish that there was a distance of 28 feet between the edge of the highway and the vehicle that Joshua struck, we cannot ignore the fact that this accident occurred at night, that the headlights of the phantom vehicle undoubtedly were shining in Joshua’s direction and that, at |s40 miles per hour, Joshua’s vehicle, in one second, would have traveled more than 58 feet — a distance more than twice the 28 feet between the edge of the highway and the parked truck.
Given the sudden emergency conditions which confronted Joshua, we conclude that the fact Joshua was unable to successfully negotiate the lane passing behind the truck does not indicate that the trial court was clearly wrong in finding no negligence on his part. Put another way, the fact that other courses of action by Joshua might have successfully avoided the accident does not mean that the trial court was manifestly erroneous in concluding that the course of action Joshua chose was reasonable in the face of the sudden emergency. As the trial court noted, both Sandy and Jesse testified to their belief that Joshua had no alternative but to swerve into the parking lot in order to avoid the collision and that Joshua had been driving in a careful manner prior to the accident.
Giving proper deference to the trial court’s findings, we find Ward’s arguments on appeal to be without merit.

CONCLUSION

For the reasons set forth above, the judgment of the trial court is affirmed. Costs are assessed to Ward Chevrolet Olds, Inc.
AFFIRMED.

. Jesse initially testified that the phantom vehicle turned in front of Joshua’s vehicle into the carwash. He later clarified, however, that the phantom vehicle turned into the car-wash behind Joshua’s vehicle, after it had forced Joshua off of the road.

. La. C.C.P. art. 1812(C) deals with special verdicts of a jury and directs the jury to attribute a percentage of fault only after determining that the party or nonparly was negligent and a legal or proximate cause of the accident.