TERRI F. LOVE, Judge.
|, This appeal arises from injuries resulting from a fall on a pier located at the Buras Boat Harbor. The trial court awarded Clinton Jones $41,250 for his alleged injuries and allocated twenty-five percent fault for the accident. Plaque-mines Parish Government, who owns the Buras Boat Harbor, was allocated seventy-five percent fault. The Plaquemines Parish Government appealed, asserting that total or additional fault should be allocated to Clinton Jones. We find that the trial court did not err and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

After completing a day of shrimping, Clinton Jones (“Clinton”) docked his father’s boat at the Buras Boat Harbor (“Harbor”), owned by the Plaquemines Parish Government (“PPG”) around midnight. Clinton unloaded the boat and began to pull an ice chest full of shrimp backwards along the pier. As he was pulling the ice chest, he fell into a hole on the pier and allegedly injured his back.
Clinton filed a petition for damages against PPG for his alleged injuries. The trial court found Clinton twenty-five percent at fault and awarded him $41,250 (seventy-five percent of the initial $55,000 award). PPG filed a motion for a new trial, which the trial court denied. PPG then appealed both judgments.
| .STANDARD OF REVIEW
“ ‘[T]he trier of fact is owed some deference in allocating fault’ since the finding of percentages of fault is also a factual determination.” Morella v. Bd. of Comm’rs of Port of New Orleans, 07-0864, p. 17 (LaApp. 4 Cir. 5/14/08), 988 So.2d 266, 275-76, quoting Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607, 610. “Much discretion” is given to the trial court, as with other factual determinations. Morelia, 07-0864, p. 18, 988 So.2d at 276. Thus, an allocation of fault will not be adjusted by the appellate courts absent a showing of manifest error or that the allocation was clearly wrong. Id.

FAULT ALLOCATION

PPG asserts that Clinton should bare additional or complete fault for the fall because it contends the hole was an “open and obvious condition of the dock.”
Comparative fault law states that: “[i]n any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty....” La. C.C. art. 2323. The Louisiana Supreme Court provided factors to use when assessing what percentage of fault to allocate to each party, which include:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
*606 Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967, 974 (La.1985). Additionally, the Louisiana Supreme Court added that the “relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in I «determining the relative fault of the parties.” Id.
Clinton’s father, Relief Jones (“Relief’), testified that a storm created the hole in the pier several months prior to Clinton’s fall. He stated that everyone was aware of the hole, including the harbor master. Further, he testified that Lloyd Boudreaux (“Mr.Boudreaux”), who had a house boat at the Harbor, attempted to keep the hole covered with plywood for his own safety. While Relief stated that the hole was not a hidden defect, he also testified that the dock had poor visibility.
Clinton also testified that he was aware of the hole and of Mr. Boudreaux’s efforts to keep the hole covered. He stated that he arrived at the Harbor around midnight and the tide must have washed away the plywood. Clinton testified that he “didn’t think about the wood because” he “was ready to go home.”
Mr. Boudreaux testified, in his deposition, that he informed the harbor master about the hole and that the harbor master had seen the hole. However, Mr. Bou-dreaux stated that the harbor master did not give his concerns much merit. Thereafter, Mr. Boudreaux testified that he covered the hole, which was about the size of a garbage can lid, with a board.
Given the testimony reflecting the knowledge of PPG, through its harbor master, we find that PPG had been aware of the hole prior to Clinton’s fall. PPG was in a superior capacity to correct the problems created by the hole in its pier. Additionally, the testimony documents that PPG did nothing to protect patrons of the Harbor from the danger. In fact, a Harbor patron, after attempting to get help from the harbor master, tried to cover up the hole with a board. Accordingly, we do not find that the trial court erred in apportioning seventy-five percent fault to PPG.

J¿DECREE

For the above mentioned reasons, we find that the trial court did not err in its fault allocation and affirm.
AFFIRMED.