MADELEINE M. LANDRIEU, Judge.
I,The plaintiffs, Mary Rodriguez and her daughters, Lisa Rodriguez and Tami Cabrera, appeal the final judgment of the district court finding the defendants free from fault in a boating accident that resulted in the deaths of Jerry Rodriguez, Sr. (the husband of Mary Rodriguez and the father of Lisa and Tami) and his son, Jerry Rodriguez, Jr. For the reasons that follow, we affirm the trial court’s judgment.
FACTS AND PROCEEDINGS BELOW
On December 9, 2007, defendant Perry Alexeee, Jr., was operating a BayStealth boat owned by defendant Mark Walters, Sr., when it collided with a flatboat operated by Mr. Rodriguez, Jr., in Petain Lagoon. In addition to the driver, Mr. Alex-cee, there were three passengers on the BayStealth, including its owner, Mr. Walters. The only occupants of the flatboat were Mr. Rodriguez, Jr. (the driver) and his father, both of whom were killed as a result of the collision.
On November 12, 2008, the plaintiffs filed a wrongful death petition against Mr. Alexeee, Mr. Walters and Auto Club Family Insurance Company (“Auto Club”), the insurer of the BayStealth, alleging that the death of the plaintiffs’ husband/ father, Mr. Rodriguez, Sr., was caused by the negligence of Mr. Alexeee | ?m driving the flatboat. The petition was later amended to include allegations of negligence against Mr. Walters, the owner of the flatboat.[1] A bench trial was conducted on October 3^, 2011, following which the trial court took the matter under advisement. On November 29, 2011, the trial court rendered judgment in favor of the defendants accompanied by written Reasons for Judgment. This appeal follows.
ISSUE
In their sole assignment of error, the plaintiffs argue that the trial court committed manifest error by finding no fault on the part of the defendants in causing the accident. Specifically, they argue that the trial court’s failure to apportion fault between the Rodriguezes and the defendants was clearly wrong.
STANDARD OF REVIEW
We review this case under the manifest error standard. Under that standard, an appellate court may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Thus, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. Stobart v. State Through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). Credibility | ^determinations by the trial court are sub *873 ject to the strictest deference, and the manifest error or clearly wrong standard demands great deference for the trial court’s findings. Theriot v. Lasseigne, 93-2661, p. 9 (La.7/5/94), 640 So.2d 1305, 1313. The trial court’s allocation of fault is a factual finding entitled to such deference. Clement v. Frey, 95-1119, p. 7 (La.1/16/96), 666 So.2d 607, 610. Thus, the appellate court is permitted to adjust the award to the parties only after it has found a “clearly wrong” apportionment of fault, and then only to the extent of lowering or raising the award to the highest or lowest point, respectively, which was reasonably within the trial court’s discretion. Id., 95-1119, pp. 7-8, 666 So.2d at 611.
DISCUSSION
I. Evidence presented at Trial

A. Investigator Testimony

Senior Agent Roy Pier of Louisiana Department of Wildlife and Fisheries was the officer in charge of the Department’s investigation of the accident. He testified that he arrived on the scene roughly one hour after the accident, remained for several hours, and then returned to the scene the next day to complete his investigation. During the course of the investigation, he spoke with all of the occupants of the BayStealth and obtained their written statements. Based on his investigation, he testified that at the time of the collision, the BayStealth was in Petain Lagoon heading toward the Terre-aux-Boeuf cut, and the flatboat was coming from Terre-aux-Boeuf going into Petain Lagoon. The BayStealth was on |4plane (flat in the water), while the flatboat was riding with its bow in the air, which indicated it was proceeding forward with some speed.
Agent Pier stated that Mr. Alexeee was an experienced operator. He testified that Mr. Alexeee had turned to the right when he first noticed the flatboat veering toward him, and then when he noticed that the occupants of the flatboat had not seen him, Mr. Alexeee had turned hard to the right and throttled up. Based upon his interviews of the passengers on the BayStealth, Agent Pier testified that they had yelled and screamed at the people on the Rodriguez boat but had failed to get their attention.
Agent Pier testified that Mr. Alexeee had done everything he could to avoid the collision. The agent found fault on the part of the Rodriguez flatboat, however. According to Agent Pier, the Coast Guard rules state that when two boats are approaching one another and there is a potential problem, each boat is to pull to their right. He concluded that Mr. Alex-cee had followed his rule, but Mr. Rodriguez had not. Agent Pier testified that the two causes of the accident were the inattention of the Rodriguezes and their inability to see forward because their vision was obstructed by several objects on the bow of the boat, including a chair and pirogue rack.
Lieutenant Robert Martin of the Louisiana Department of Wildlife and Fisheries, Enforcement Division, was the supervising agent for the investigation of this accident. As part of the investigation, Lieutenant Martin also interviewed the passengers on the boat being operated by Mr. Alexeee. Lieutenant Martin testified Rthat when a collision is imminent, a boat operator “should reasonably do what [he] can to avoid the accident ... regardless of what that action is.” In his opinion, Mr. Alex-cee had done everything he could do to avoid the accident. Lieutenant Martin concluded that Mr. Rodriguez had been operating the flatboat carelessly, but Mr. Alexeee had not been careless in the operation of his boat.

B. Eyewitness Testimony

Mr. Alexeee testified that he was the one operating the boat that day because he *874 was familiar with the Delacroix area as he fished there “all the time.” He testified that there were three passengers on the BayStealth with him: Mark Walters (the owner of the boat), and two friends, Spencer Howard and Terry Scott. Mr. Alexcee stated that prior to the accident, the BayS-tealth was travelling 25 to 30 miles per hour. When he first saw the flatboat, Mr. Alexcee throttled down so that he could determine the direction the flatboat was travelling. He testified that he throttled down at least one more time, but did not stop the boat because “you’re not really supposed to stop exactly when a boat [is] coming towards you.” He stated that he believed the Rodriguezes never saw the BayStealth because they kept coming straight toward him and did not attempt to change their course.
Mr. Walters testified that he owned the BayStealth. At the time of the collision, Mr. Walters was seated in the front left captain’s chair. He confirmed that his nephew, Mr. Alexcee, was driving the boat that day because Mr. Walters himself was not familiar with the area in which they were fishing. Mr. Walters said he was fixing his fishing reel when he noticed that Mr. Alexcee pulled the |Bthrottle back to slow down. Mr. Walters first saw the flatboat after Mr. Alexcee throttled back for the second time. Mr. Walters stated that Mr. Alexcee throttled down a third time, then throttled up and turned to the right. He did not recall seeing anyone on the flatboat because the flatboat was “riding high.” However, Mr. Walters recalled everyone on his boat shouting at the people in the flatboat in order to get their attention. He stated that he never saw the flatboat attempt to change direction. Mr. Walters knew Mr. Alexcee to be an experienced operator and had not observed Mr. Alexcee operating the boat improperly or recklessly or dangerously that day.
Mr. Scott testified that he was sitting next to Mr. Alexcee, who was standing at the steering column. He stated that he told Mr. Alexcee that the flatboat looked like it was coming towards them, but could not recall the distance between the two boats. At that time, Mr. Alexcee “gunned it and turned it to the right.” Mr. Scott further testified that he knew that the passengers on the flatboat did not see them because the bow of the flatboat was high in the air and that would have obstructed their view. In his opinion, Mr. Alexcee did everything he could possibly do to avoid being hit by the flatboat.
Mr. Howard testified that he was sitting on a chair in the front of the boat at the time of the collision. He stated that he noticed the flatboat after they rounded a curve. He testified that the flatboat was going fast, and it looked like it was up in the air. He stated that the occupants of the flatboat were not looking in the 17direction of the BayStealth, and the passengers of the BayStealth were unable to get their attention.

C. Expert Testimony

Charles Clark testified as an expert on behalf of the plaintiffs. The court accepted him as an expert in the areas of boat accident reconstruction, boating safety, and the navigational rules of the road. Mr. Clark was familiar with the scene of the accident. After reviewing the photographs of the two boats, Mr. Clark determined that both boats appeared to be in compliance with safety regulations.
Mr. Clark opined that the speed of the BayStealth was 25-30 miles per hour, and the speed of the flatboat was less than 15 miles per hour. He opined that once Mr. Alexcee saw the flatboat, there was time for him to take action before a collision became imminent. He stated that because the flatboat was “coming through the cut *875 with its bow in the air, there should have been some reservation on the operator of the Bay boat’s behalf to wonder what the intentions of that boat would be, and he should have either made a major course change ... to port or simply pulled the throttle back and stopped until he understood what the intentions of the boat coming the cut were.” Because Mr. Alexcee did not execute a “throttle chop” and stop his boat immediately, Mr. Clark opined that Mr. Alexcee was not operating the boat in a safe and sound manner prior to and at the time of collision and that he was not maintaining a proper lookout. He also opined that the BayStealth was not traveling at a safe speed. In Mr. Clark’s opinion, had Mr. |8Alexcee turned left into the open bay when he first saw the flatboat or slowed down and brought his boat to a stop, the collision would not have occurred.
Based upon the testimony of the occupants in the BayStealth, Mr. Clark believed the BayStealth was in the best position to avoid the collision. He concluded that the cause of the collision was Mr. Alexcee’s “inability to interpret what he was seeing as the actions of the flatboat.”
Commander David Cole testified as an expert on behalf of the defendants in the areas of boating accidents and reconstruction, Coast Guard navigational rules of the road, regulatory analysis, casualty and accident investigation, and marine safety. Commander Cole testified that, in his opinion, Mr. Alexcee did everything he could possibly do to avoid the collision and that his actions were “entirely within the dictates of the Rules of the Road, within the dictates of prudent marine seamanship.” Commander Cole agreed that the Rodri-guezes could not see the BayStealth due to an obstructed view. He stated, however, that the fact that the bow of the flatboat was up and its occupants were looking for a fishing spot would not provide them with an exception to any of the rules, particularly the “Lookout Rule,” which provides that every vessel has to maintain an adequate lookout by sight and hearing at all times. Commander Cole stated that absent communication between two potentially colliding vessels, the rules never authorize a vessel turning to the left instead of to its right. Commander Cole further testified that the impact to the two vessels indicated that the flatboat hit the left side of the BayStealth. Commander Cole specifically disagreed with Mr. Clark’s opinion that the |9BayStealth should have turned left into the open water. Commander Cole stated that this maneuver would put have put the BayStealth crossing the bow of the flatboat, which is strictly prohibited by the rules, as one boat is not supposed to cross the bow of another under any circumstances. Commander Cole agreed with the Wildlife and Fisheries Department investigation that the sole cause of the accident was the inattention and obscured view of the Rodriguezes, which constitutes a violation of the Lookout Rule. He concluded that Mr. Alexcee had done everything he could to avoid the collision, and that there was no fault on the part of anyone other than those in the flatboat.
II. Trial Court Reasons
In its Reasons for Judgment, the trial court stated:
A collision occurred between the two vessels when the Rodriguez flatboat turned “left” across the bow of the BayStealth vessel. This occurred when it appeared that a bow or head on collision between the vessels was imminent.
The Rules for Navigation or “Rules of the Road” do not permit the maneuver performed by Jerry Rodriguez, Jr., under the circumstances present at the time of the collision. Under the facts presented at the time immediately prior *876 to the collision, the vessels should have altered their courses to the starboard so that the vessels would have each passed to the port side of the other. Alexcee attempted to do this, Rodrigues did not. Unfortunately, Rodriguez turned his vessel into the BayStealth’s path. Accordingly, Alexcee did not breach the duty owed under these circumstances. Without such breach the owner of the BayStealth and/or his insurer are not liable for damages resulting from the collision.
The Court finds that Jerry Rodriguez, Jr., was the cause of this accident when he breached his duty to keep a proper lookout and to keep to the right to avoid this collision. As a result he is found to be negligent and at fault in this collision. There is no liability on the part of the defendant(s).
| mill. Law and Analysis
This record contains ample evidence to support the trial court’s conclusion that the accident was caused solely by the fault of Mr. Rodriguez, Jr., who breached his duty to keep a proper lookout and to take action to avoid the collision. In view of this evidence, we find no manifest error in the trial court’s finding that the defendants were free from fault.
It is apparent from the record of these proceedings that the Rodriguezes were never aware of the presence of the BayS-tealth vessel. There is no evidence to indicate that anyone on the Rodriguez flatboat either heard or saw the other vessel before crossing its path. Mr. Alexcee, therefore, was forced to interpret what action the flatboat would take. It is un-controverted that Mr. Alexcee did see the flatboat and did take action under exigent circumstances in an attempt to avoid the collision, although his chosen course of action ultimately proved unsuccessful. Even if we might have decided this case differently had we been sitting as the triers of fact, we cannot conclude that the trial court’s findings are unreasonable or manifestly erroneous based upon the record. See Rosell v. ESCO, supra.
Two experts in boating accident reconstruction, boating safety, and the rules of the road for vessels testified. The plaintiffs’ expert, Mr. Clark, opined that Mr. Alexcee’s inability to properly interpret the intentions of the Rodriguez flatboat and his subsequent alteration of course caused the collision. The defendants’ expert, Commander Cole, opined that the accident occurred because Mr. Rodriguez breached his duty to maintain an adequate lookout and to take action to avoid any 11 impending collision, whereas Mr. Alex-cee complied with this duty. Where two permissible views of the evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State Through Dept. of Transp. and Development, 617 So.2d 880, 883 (La.1993).
In addition to the experts, two officers of the Department of Wildlife and Fisheries testified as to the conclusion they had reached based upon their investigation of the boating accident. Their conclusions were that Mr. Rodriguez had caused the collision due to his inattention and obscured view, and that Mr. Alexcee had done everything he could do to avoid the collision and had not violated any of the applicable rules of the road.
Based on the totality of the evidence, we cannot say that the trial court was clearly wrong in finding that Mr. Rodriguez was solely at fault.
CONCLUSION
Accordingly, for the reasons stated, we affirm the judgment of the district court.
AFFIRMED.
JENKINS, J., Dissenting with Reasons.

. These allegations included, for instance, the failure “to maintain and ensure the safe operation and proper control of his vessel,” "to ensure that the operator of his vessel had appropriate and proper training ...,” and "to exercise appropriate supervision and control over the operator of his vessel at the time of the accident.”