# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

## 15-499

CYRIL PREJEAN, ET AL.

VERSUS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, ET AL.

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2012-4630-F
HONORABLE SHARON D. WILSON, DISTRICT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of James T. Genovese, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**REVERSED AND RENDERED.**

James E. Diaz, Jr.
Leah B. Guilbeau & Associates
4023 Ambassador Caffery Parkway, Suite 100
Lafayette, LA 70503
(337) 988-7240
COUNSEL FOR DEFENDANTS/APPELLANTS:
    State Farm Mutual Automobile Insurance Company
    Russell C. Horton

**Joseph Pousson, Jr.**
**Plauché, Smith & Nieset**
**P. O. Box 1705**
**Lake Charles, LA 70602**
**(337) 436-0522**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **State Farm Mutual Automobile Insurance Company**

**Billy Edward Loftin, Jr.**
**Loftin, Cain & LeBlanc, LLC**
**113 Dr. Michael DeBakey Drive**
**Lake Charles, LA 70601**
**(337) 310-4300**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Russell C. Horton**
    **Mary Beth Horton**

**Barry A. Roach**
**Shane K. Hinch**
**Christopher S. Lacombe**
**Larry A. Roach, Inc.**
**2917 Ryan St.**
**Lake Charles, LA 70601**
**(337) 433-8504**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Cyril Prejean**
    **Jessyca Steward**

**GREMILLION, Judge.**

In this horse/vehicle accident, the driver and his insurer appeal the trial court's finding that he was 100% at fault for rear-ending a horse. For the following reasons, we reverse and render.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2012, the plaintiffs, Cyril Prejean and Jessyca Steward, were riding Prejean's horse, "Mississippi," with two friends riding another horse on Dave Dugas Road in Calcasieu Parish at approximately 6:25 p.m. Prejean, Steward, and Mississippi were hit by a GMC Yukon driven by the defendant-appellant, Russell Horton, who was insured by State Farm Mutual Automobile Insurance Company. Prejean and Steward suffered injuries as a result of the accident. Sadly, Mississippi died from a gunshot wound to ease his suffering.

Prejean and Steward filed a petition for damages in November 2012. The Hortons filed a reconventional demand requesting damages.[1] Following a September 2014 trial, the trial court found Russell Horton 100% at fault in causing the accident. It awarded Prejean $17,969.50 in total damages and Steward $6,962.00 in total damages.[2] State Farm and Horton now appeal and assign as error:

1. The trial court committed legal error in ruling that the plaintiff had no legal obligation to comply with the highway law of this state as requires a vehicle operated on a highway after sunset to display mandated illumination.

---

[1] State Farm was listed as a third-party defendant in this document. The reconventional demand and third-party demand was filed on behalf of the Hortons by Billy E. Loftin of Loftin, Cain & LeBlanc, LLC. A liability policy that had been issued to Prejean by State Farm had expired, and State Farm was dismissed from the lawsuit via summary judgment.

[2] Prejean's award consisted of $10,469.50 in medical expenses, $6,000.00 for pain and suffering, $1,000.00 for property damage/loss of horse, and $500.00 for property damage/loss of saddle. Steward's award consisted of $2,962.00 in medical expenses and $4,000.00 for pain and suffering.

2. The trial court committed factual error in finding that the plaintiff Cyril Prejean was free from fault under circumstances that he was riding a horse at night in the main travel lane of a highway while wearing dark clothes and riding a dark horse, and with a passenger wearing camouflage.

3. The trial court committed factual error in finding Russell Horton to be at fault in failing to see the rider of a dark horse, while wearing dark clothes, at night, in time to avoid a collision.

Prejean and Steward answered the appeal and seek modification of the judgment pursuant to La.Code Civ.P. art. 2133. They assign as error:

1. The trial court erred in only awarding Ms. Steward $4,000.00 in general damages for her pain and suffering. This is inconsistent with this Court's precedent and the trial court's own determination of Mr. Prejean's damages.

Prejean filed a peremptory exception of no right of action and acquiescence in the judgment and motion for partial dismissal, arguing that State Farm has no right of action to request damages on behalf of the Hortons individually, as State Farm does not represent them individually. Prejean further claims that the Hortons themselves did not appeal the trial court's judgment and have, therefore, acquiesced in it.

## DISCUSSION

The crux of Horton's argument on appeal is that Prejean should have outfitted Mississippi with lights as required by statute for vehicles in accordance with La.R.S. 32:53, 32:301, and 32:124, and that Prejean should have been cast with 100% of the fault for causing the accident.

### Lights

We use the de novo standard in reviewing a trial court's determination regarding questions of law. *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La.1983). Although we agree that it was not the wisest decision to ride a dark

2

horse in the road at dusk, there simply is no legal requirement that a ridden horse be illuminated. Attempting to apply the suggested statutes to a horse results in absurd consequences in contravention of La.R.S. 32:22, which specifically provides that those parts of Title 32 "that by their very nature can have no application" are inapplicable to persons riding horses. Louisiana Revised Statutes 32:22 states in full:

> Every person riding an animal or driving any animal-drawn vehicle upon a roadway shall be granted all of the rights and be subject to all of the duties applicable to the driver of a vehicle by this Chapter, except those provisions which by their very nature can have no application.

The statute that State Farm argues should apply to ridden horses to require it be illuminated is La.R.S. 32:53 titled "Proper equipment required on vehicles; display of plate:"

> A. (1) No person shall drive or move, nor cause or knowingly permit any vehicle owned or controlled by him to be driven or moved, on any highway of this state, at any time, any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person or property, or which does not contain those parts or is not at all times equipped with such lamps and other equipment, in proper condition and adjustment, as required in this Chapter, or which is constructed or equipped in any manner in violation of this Chapter, and no person shall do any act forbidden or fail to perform any act required under this Chapter.

> (2) The permanent registration license plate assigned to a trailer, semitrailer, motorcycle, or other motor vehicle shall be attached to the rear thereof. Notwithstanding the foregoing, the permanent registration license plate assigned to any truck having a gross vehicle weight in excess of ten thousand pounds or to any dump truck may be attached to either the front or rear thereof. For the purposes of this Section, dump truck means any truck with a bed that raises to dump a load. The permanent registration license plate shall be so displayed during the current registration year, except as otherwise provided herein.

> (3) Every permanent registration license plate shall at all times be securely fastened to the vehicle to which it is assigned, so as to prevent the plate from swinging, and at a height not less than twelve

3

inches from the ground, measuring from the bottom of such plate, in a place and position to be clearly visible, and shall be maintained free from foreign materials and in a condition to be clearly legible.

(4) The provisions of this Section shall not be construed to prohibit placing a permanent registration license plate on a rear fender as long as it is facing to the rear of the vehicle.

B. Nothing contained in this Chapter shall be construed to prohibit the use of additional parts and accessories on any vehicle not inconsistent with the provisions of this Chapter.

C. The provisions of this Chapter with respect to equipment on vehicles shall not apply to implements of husbandry, nor to vehicles used solely in building highways when they are temporarily upon the highways, except as herein made applicable. These exceptions shall not exclude any vehicle or combination of vehicles not used primarily for this purpose, or ordinary commercial vehicles upon which are placed removable machinery for such purposes, or vehicles designed for the purpose of evading the limitations of this Chapter.

D. No person shall drive a vehicle upon highways within this state, or permit or allow any vehicle owned by him or under his control to be driven on said highways, unless and until such vehicle bears an inspection tag showing it to have been inspected and approved as required by the provisions of R.S. 32:1301-32:1310, if such vehicle is required to be so inspected.

Louisiana Revised Statutes 32:301(A) lists when lighted lamps are required:

A. Every vehicle upon a highway within this state shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles subject to exception with respect to parked vehicles at any of the following times:

(1) At any time between sunset and sunrise.

(2) When, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernable at a distance of five hundred feet ahead.

(3) When moisture in the air or precipitation necessitates the continuous use of windshield wipers.

(4) While driving in a tunnel.

Louisiana Revised Statutes 32:316(A) addresses lamps on others vehicles and equipment:

4

Every vehicle, including animal drawn vehicles and vehicles referred to in R.S. 32:53, not specifically required by the provisions of this article to be equipped with lamps or other lighting devices, shall at all times specified in R.S. 32:301 be equipped with at least one lamp displaying a white light visible from a distance of not less than 1,000 feet to the front of said vehicle, and shall also be equipped with two lamps displaying red light visible from a distance of not less than 1,000 feet to the rear of said vehicle, or as an alternative, one lamp displaying a red light visible from a distance of not less than 1,000 feet to the rear and two red reflectors visible from a distance of 100 to 600 feet to the rear when illuminated by lawful lower beams of head lamps.

The 1933 case of *Meredith v. Kidd*, 147 So. 539 (La.App. 2 Cir. 1933), is the only case addressing this issue. In *Meredith*, the court found that if there is no statute to the contrary, a person riding a horse without an attached vehicle is not required to have lights after dark in order to avoid being negligent. There is no law to the contrary, and this jurisprudence still holds true today. Louisiana Revised Statutes 32:53 cannot apply to a ridden horse without an attached vehicle without absurd consequences resulting. Further, La.R.S. 32:316 clearly refers to "animal drawn vehicles." If the legislature wanted to include ridden animals, it could have easily done so. Thus, we find no error of law in the trial court's ruling that a horse is not required to be illuminated under the law.

However, our agreement with the trial court that a horse need not be illuminated does not preclude an allocation of fault assessment that takes into account the negligence of Prejean. The state of travel on Louisiana highways is vastly different today than it was in 1933, and in a modern society, persons riding horses in lanes normally traversed by motor vehicles must bear some liability in causing accidents depending on the facts and circumstances of the case. Here, we must find that the trial court manifestly erred in assessing Horton with 100% of the fault.

*Evidence*

Steward testified that she and her friends had been riding horses since approximately 1:00 p.m., and that they were riding "in the middle of the right lane." She described Mississippi as being brown in color. She said that in the area they were riding, there was no shoulder, just a four-foot ditch. Steward was wearing jeans and a camouflage jacket. Upon impact, Steward said she flew on top of the Yukon and stopped herself with the luggage rack. She said that she had not drunk any alcohol or consumed any drugs. Steward said she sought medical attention about a week after the accident because she started having migraine headaches and lower back pain. She treated with a chiropractor about three times per week for about four months.

Prejean testified that he started riding that day around 8:00 a.m. with his friend, Chris Parish, and later met with Steward and her friend, Tori Lacombe. He was wearing blue jeans, a red shirt, and a brown saddle slicker. He said that he drank approximately four beers over the course of the day. Prejean said it was their routine to get off the road when a car was approaching and that people had been "flying by" them all day. He said that they had yelled at some of the passers-by to slow down. Regarding the accident, as the Yukon approached from behind, Prejean realized he would not have enough time to get off the road but had his horse sit down on the road so he and Steward would not go through the windshield. He said that he just did not have enough time to jump the ditch and get off the roadway. He remembers nothing after the accident until he awoke at the hospital. He was discharged the same day. Prejean described headaches and neck and back pain following the accident. He said he had pain for about a month, but then it tapered off, and he had no residual pain at the time of trial.

Chris Parish testified that the horse he was riding was in front of Mississippi and that he attempted to jump the ditch, but did not successfully complete the jump because he was hit by Mississippi after the Yukon pushed him forward.

Deputy Tye Bistre of the Calcasieu Parish Sherriff's Office testified that he was dispatched to the scene following a call received at 6:25 p.m. and arrived at the scene at 6:32 p.m. Deputy Bistre testified that he was already en route to the scene because they had received a call advising that horses were traveling on the roadway in the dark. Deputy Bistre was going to advise the riders to get off the roadway because it was a traffic hazard, and it was not a "very smart move," although he stated his belief that the horses had every right to be on the road.

Russell Horton testified that he had been to church and Kroger's and had picked up a Red Box movie to watch with his wife later that day. He said he was traveling between forty and forty-five miles per hour on his way home. His headlights on his Yukon automatically come on, and they were on at the time of the accident. Horton said his first indication that an accident was about to occur was hearing his wife, Mary Beth, screaming. Horton said he suffered head, shoulder, and hip injuries following the accident. He said he has dizziness since the accident that prevents him from driving. He said his wife does all of the driving now. Horton admitted to having a long history of depression and anxiety and other significant medical issues such as diabetes. He had been taking Xanax daily for thirty years. He also suffers from agoraphobia (fear of leaving the house) and has been collecting disability for same since 2006. He said he did not see any horse before he hit Mississippi.

Mary Beth Horton testified that she saw the white horse that Parish was riding and yelled, "Oh my God!" at the very same moment her husband slammed

on the brakes, but it was too late, and her husband ran into Mississippi.  She said her husband can no longer help out around the house doing yard work or minor repairs all of which she attributed to the accident rather than his worsening diabetes, heart disease, old-age, or any other reason.

*Fault Allocation*

In reviewing fault allocation, the factfinder's allocation is a factual determination that is owed deference and is subject to the manifest error/clearly wrong standard.  *Clement v. Frey,* 95-1119, 95-1163 (La. 1/16/96), 666 So.2d 607. The supreme court recently summarized the manifest error standard of review:

> This court has announced a two-part test for the reversal of a factfinder's determinations:  (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).  *See Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987).  This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's findings.  *See id.*  The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.  *See id.*

*Lobell v. Rosenberg*, 15-247, p.10 (La. 10/14/15), __ So.3d __, __.

In reviewing the factfinder's allocation of fault, the supreme court has set forth various factors for consideration:

> (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.  And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.

*Watson v. State Farm Fire & Cas. Ins. Co.*, 469 So.2d 967, 974 (La.1985).  In *Clement*, 666 So.2d at 611, the supreme court instructs that:  "After the court of

8

appeal finds a "clearly wrong" apportionment of fault, it should adjust the award, but only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion."

We do not think that reasonable people could assess Horton with 100% of the fault in causing this accident. Riding a dark horse in dark clothing at dusk is simply unwise. This was made plainly obvious by the fact that cars were "flying by" Prejean and his guests to such an extent that they cursed at the passers-by. Moreover, numerous people had called to report that horses were traveling in the roadway, a condition which reasonable people obviously find dangerous. While Horton was most certainly inattentive, Prejean and his companions were unwise in their travels. There was some dispute about whether it was "light or dark," however, the trial court did not err in finding that the accident occurred at about 6:30 p.m. based on phone calls made to the police department and Deputy Istre's arrival time on the scene. Sunset occurred at 6:04 p.m. and civil twilight occurred at 6:28 p.m. according to the United States Naval Observatory Astronomical Applications Department's record which was submitted into evidence. In terms of motor vehicles, a driver's negligence is not normally imputed to his passengers because of the passenger's lack of control over the driver. *Adams v. Security Ins. Co. of Hartford*, 543 So.2d 480 (La.1989). We find the same result would be reached here as there was no evidence whatsoever that Steward had any control over the horse or in any way contributed to the accident. Accordingly, we find that Prejean and Horton should each bear fifty percent of the fault in causing this accident, and we reapportion fault accordingly.

Additionally, State Farm points out that there was no evidence pertaining to the value of the saddle that the trial court assigned at $500.00. There must be some

9

evidence in the record to support an award. *Sigue Trucking, Inc., v. Insured Lloyds*, 417 So.2d 97 (La.App. 3 Cir. 1982). We can find nothing in the record setting the value of the saddle at $500.00. Thus, we reduce Prejean's overall award from $17,969.50 to $17,469.50. When reduced by fifty percent, Prejean is entitled to $8,734.75. Although State Farm paid $9,746.51 to the Hortons for property damage, a rental vehicle, and medical expenses, there was nothing in the judgment as to State Farm's subrogation claim and it did not assign as error the trial court's failure to award any recovery for those payments. Therefore, State Farm's subrogation claim is not at issue on appeal.

### Steward's Damage Award

Steward argues that her general damages award was excessively low particularly as compared to Prejean's general damages award. In another landmark Louisiana Supreme Court case, *Wainwright v. Fontenot*, 00-492, p. 6 (La. 10/17/00), 774 So.2d 70, 74 (alteration in original), the standard to be used by an appellate court when reviewing a quantum award was set forth:

> The assessment of "quantum," or the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review. As such, "the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact." *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La.1993). Moreover,

> > before a Court of Appeal can disturb an award made by a [factfinder,] the record must clearly reveal that the trier of fact abused its discretion in making its award. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court.

> *Coco v. Winston Indus., Inc.*, 341 So.2d 332, 334 (La.1977) (internal citations omitted).

Steward and Prejean suffered similar injuries although Prejean was taken to the emergency room. Steward's treatment was four months, whereas Prejean treated for only three months. After being propelled onto the roof of the Yukon and stopping herself on the luggage rack, Steward suffered from headaches, migraines, and lower backaches. Steward treated with a chiropractor initially three times per week and then less often. Prejean's medical expenses totaled $10,469.50 while Steward's totaled only $2,962.00. Although we find Steward's award low, we cannot say that it was abuse of the trial court's discretion. Thus, the amount owed Steward from Horton, based on our reallocation of fault, equals fifty percent of $6,962.00 or $3,481.00.

### *Hortons' Claim for Damages*

Although not briefed or assigned as error, State Farm, in the last sentence of the conclusion paragraph of their brief, argues that we should "also award damages determined to be reasonable in favor of Russell Horton."

Prejean points out that State Farm is not in the proper procedural capacity to appeal the Hortons' personal claim for damages because the Hortons did not individually appeal the judgment and that State Farm cannot request damages for a party they do not represent. We find merit to this argument and find that the Hortons acquiesced in the judgment.

The matter of the damages allegedly suffered was not briefed. A party cannot appeal a judgment if he "voluntarily and unconditionally acquiesced in a judgment rendered against him." La.Code Civ.P. art. 2085. State Farm has no standing to claim damages for Horton.

11

> Acquiescence in a judgment is never presumed, and the party alleging abandonment must establish by direct or circumstantial evidence that the party now appealing intended to acquiesce and to abandon his right to appeal. *Major v. Louisiana Department of Highways*, 327 So.2d 515 (La.App. 1st Cir.1976). Furthermore, appeals are favored in law, and forfeiture of a party's right to appeal through acquiesce[nce] should be decreed only when the party's intention to acquiesce and to abandon his right of appeal is clearly demonstrated. *Kendrick v. Garrene*, 231 La. 462, 91 So.2d 603 (1956).

*Hoyt v. State Farm Mut. Auto. Ins. Co.*, 413 So.2d 1003, 1005 (La.App. 3 Cir.), *writ denied*, 423 So.2d 1180 (La.1982) (quoting *Koerner & Lambert, A Prof'l Law Corp. v. Allstate Ins. Co.*, 363 So.2d 546 (La.App. 4 Cir.1978.)

The Hortons were represented individually by a different attorney in their reconventional demand for damages. The lack of an individual appeal coupled with a failure to brief any of the damages allegedly suffered by the Hortons results in the Hortons' acquiescence in the trial court's judgment that did not award any damages to them. Accordingly, there is no merit to this claim.

## CONCLUSION

The judgment of the trial court assessing Russell Horton with 100% of the fault is reversed. Fault is allocated fifty percent to the plaintiff-appellant, Cyril Prejean, and fifty percent to Russell Horton. The award of damages to Cyril Prejean is reduced by $500.00 (cost of saddle) and then fifty percent for a total of $8,734.75. The amount of the award of damages to Jessyca Steward is affirmed at $6,962.00 but reduced by fifty percent for a total of $3,481.00. All costs of this appeal are to be assessed equally between the parties.

**REVERSED AND RENDERED**.

12